In re A.H. ROBINS COMPANY, INCOR-
PORATED, Debtor, Employer's Tax
Identification No. 54–0486348.

Irene GERMANY, Movant,

v.

DALKON SHIELD CLAIMANTS
TRUST, Respondent.

No. 85–01307–R.

United States District Court,
E.D. Virginia,
Richmond Division.

March 9, 1995.

Irene Germany, Maywood, Illinois, pro se.

Orran Lee Brown, Richmond, Virginia, for Dalkon Shield Claimants Trust.

### MEMORANDUM

MERHIGE, District Judge, and BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came before the Court on March 7, 1995, on a motion by Dalkon Shield Claimant Irene Germany, who appears *pro se*,[1] to vacate an arbitrator's decision. For

---

1. Movant was represented by two attorneys at the arbitration hearing. In the instant matter, however, she appears *pro se,* and the Court is mindful that courts must liberally construe the pleadings of *pro se* parties. *See Gordon v. Leeke,* 574 F.2d 1147, 1151–52 (4th Cir.) *cert. denied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978); *Coleman v. Peyton,* 340 F.2d 603, 604 (4th Cir.1965).

the reasons which follow, Movant's motion will be denied.

## I.

Movant is a Dalkon Shield claimant who rejected her Option 3 offer and proceeded to arbitration under section E.5(a) of the Claims Resolution Facility ("CRF"). Her case was heard on September 26–27, 1994. At the hearing, Movant asserted that the Dalkon Shield, which she allegedly used from 1974 until 1984, was the cause of various illnesses with which she had been diagnosed, including pelvic inflammatory disease ("PID"), endometritis, left hydrosalpinx and a right tubal abscess. As a result of these problems, Movant noted that she underwent a total abdominal hysterectomy and bilateral salpingo-oophorectomy. The Dalkon Shield Claimants Trust ("Trust") argued that Movant's injuries were caused by her exposure to sexually transmitted diseases.

The Arbitrator considered all of the evidence presented at the hearing, including the testimony of several doctors and experts. He concluded that the Dalkon Shield was responsible for some episodes of PID, specifically "chronic endometritis in the uterus, damage to the uterine wall, pain, [and] bleeding." Movant's Mem., Arbitrator Decision ¶ 16. He also concluded that the Dalkon Shield was the cause of "some vaginal discharge, and some of the emotional distress" claimed by Movant. *Id.* On the other hand, the Arbitrator also concluded that Movant had a history of exposure to sexually transmitted diseases, and that such exposure was the cause of the "medical conditions in the fallopian tubes and ovaries requiring the complete hysterectomy." *Id.* ¶¶ 13–14. On this basis, the Arbitrator awarded Movant $15,000.00.

Movant now challenges this award. Specifically, she advances the following reasons for her appeal: (1) the Arbitrator was biased; (2) the Arbitrator exceeded his powers, or exercised them such that he failed to make a final, definite and unambiguous award; (3)

the Arbitrator based the award on evidence outside the clinical record; (4) the form of the award was flawed.

## II.

The Arbitration Rules specifically set forth the grounds for vacating an arbitrator's decision:

(1) The award was produced by corruption, fraud, or undue means.

(2) The arbitrator was biased or corrupt.

(3) The arbitrator was guilty of abuse of discretion in refusing to postpone the hearing, or refusing to admit competent and relevant evidence, or engaging in misconduct that prejudiced the moving party.

(4) The arbitrator exceeded his or her powers, or so exercised them such that he or she failed to make a final, definite, and unambiguous award.

Rules Governing Regular Arbitration, Rule XIV.B. A party seeking to vacate an award must establish at least one of these grounds, all of which are taken from, and interpreted consistently with, parallel provisions in the Federal Arbitration Act. *Id.* Rules XIV.B & F (*citing* 9 U.S.C. §§ 9–13); *see* 9 U.S.C. § 10(a).

This Court, in previously considering a challenge to an arbitrator's decision, has acknowledged that an arbitrator's decision receives substantial deference on review, and may only be vacated "upon a showing of one of the grounds listed in the Arbitration Act, or if the arbitrator acted in manifest disregard of the law." *O'Connor v. Dalkon Shield Claimants Trust*, 158 B.R. 640 (Bkrtcy.E.D.Va.1993) (*citing Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953); *Upshur Coals Corp. v. UMWA, Dist. 31*, 933 F.2d 225, 228 (4th Cir.1991)).[2] Thus, a court may not overturn an arbitration decision merely because it "would have reached a different conclusion if presented with the same facts." *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir.1994) (citations omitted), *cert. denied,* —

---

2. Absent such deferential review, challenges to arbitration awards would be facilitated and, consequently, the "twin goals" of arbitration, efficient dispute resolution and litigation avoidance, would plainly be frustrated. *Remmey v. Paine-Webber, Inc.*, 32 F.3d 143, 146 (4th Cir.1994) (citations omitted).

U.S. ——, 115 S.Ct. 903, 130 L.Ed.2d 786 (1995). Indeed, a reviewing court generally is not to reconsider the arguments and evidence proffered at the hearing; rather, its "role is limited to determining whether the arbitration process itself was flawed." *Id.* at 151.

## A. Arbitrator's bias

■ Movant asserts that the Arbitrator was biased in that he never addressed certain questions regarding causation. Specifically, she proposes that the Arbitrator failed to address whether Movant's injuries were caused by Chlamydia Trachomatous, as claimed by the Trust, or anaerobic bacteria, as Movant argued. Movant also contends that bias is evidenced through the Arbitrator's allegedly deficient knowledge of biological science.

■ "Bias" is defined as a "[c]ondition of [the] mind, which sways judgment and renders [a] judge unable to exercise his functions impartially in [a] particular case." Blacks Law Dictionary 162 (6th ed.1990). In order to set aside an arbitration award for bias, the Movant must bear the "significant burden" of establishing "specific facts that indicate improper motives on the part of an arbitrator." *Remmey,* 32 F.3d at 148. The partiality alleged "must be 'direct, definite, and capable of demonstration rather than remote, uncertain or speculative.'" *Peoples Security Life Ins. Co. v. Monumental Life Ins. Co.,* 991 F.2d 141, 146 (4th Cir.1993) (*quoting Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968)).

A review of these principles indicates that Movant has failed to satisfy this weighty burden. As noted above, Plaintiff merely states that the Arbitrator did not address two specific causation-related questions, and that he is not well-versed in biological science. Nowhere does she allege that his decision lacked impartiality. Nor does she

contend that the Arbitrator acted with an improper motive. Accordingly, the Court concludes that Movant's allegations of bias are not well founded.

## B. Arbitrator's exceeding powers

■ Movant argues that the Arbitrator exceeded his powers in concluding that the majority of Movant's injuries were caused by her exposure to sexually transmitted diseases. Movant states that this conclusion was devised by the Arbitrator and, thus, an abuse of power.

■ An arbitrator's authority is contractually defined by the agreement pursuant to which the parties submit their dispute to arbitration. *See Richmond, Fredericksburg & Potomac Ry. Co. v. Transp. Communications Int'l Union,* 973 F.2d 276, 279 (4th Cir.1992); *Upshur,* 933 F.2d at 228–29. " 'As long as the arbitrator is even arguably construing or applying the contract,' a court may not vacate the arbitrator's judgment." *Upshur,* 933 F.2d at 229 (*quoting United Paperworkers v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987)).

Movant and the Trust entered into an "Agreement to Submit to Regular Binding Arbitration" in August, 1992. Pursuant to this agreement, the parties agreed that "the issue to be arbitrated is the amount, if any, at which the Claim should be allowed." Trust Mem., Ex. A. There is no doubt that this broadly phrased issue encompasses causation; indeed, this Court has noted that causation is a crucial element of a claimant's case during an arbitration hearing. *See Troutt v. Dalkon Shield Claimants Trust,* 197 B.R. 519 (E.D.Va.1994); *Dalkon Shield Claimants Trust v. Finkel,* 197 B.R. 513 (E.D.Va.1994). Accordingly, the Arbitrator did not exceed the authority vested in him by the parties in rendering a conclusion as to causation.[3]

---

**3.** Movant also proposes that the Trust never advanced the argument that Movant's injuries were caused by her exposure to sexually transmitted diseases. Movant is incorrect; the Trust argued causation to the Arbitrator in its Pre–Hearing Memorandum and Statement of Facts. *See* Trust

Mem.Ex. B at 8. ("The weight of the evidence in this case will show that the claimant's injuries arose from an infection due to sexually transmitted organisms completely unrelated to the Dalkon Shield").

## C. Evidence considered outside the clinical record.

In his decision, the Arbitrator made numerous factual findings. Among these findings were his conclusions that Movant had been treated for "endometriosis and recurrent sexually transmitted diseases" and had been exposed over a long period of time to "gonorrhea, chlamydia condyloma, trichomoniasis, and human papilloma virus ["HPV"]." Movant's .Mem., Arbitrator's Decision at ¶¶ 6–7. Movant asserts that the Arbitrator, in making these findings, relied upon various pieces of evidence that were not established by the record. In particular, she alleges that there was no evidence that she (1) was ever treated for endometriosis; (2) ever had HPV; (3) had a long history of sexually transmitted diseases; and (4) ever had chlamydia. Movant also asserts that she only suffered damage to one tube and one ovary, not a bilateral injury as the Arbitrator concluded.

In advancing these arguments, Movant does not specify the specific ground in Rule XIV.B upon which she relies. The Court, however, assumes that Movant is alleging abuse of discretion by the Arbitrator in rendering factual conclusions not based on the clinical record, and that she was prejudiced thereby. *See* Arbitration Rule XIV. B(3). In order for an arbitration decision to be set aside on the basis of an arbitrator's alleged misconduct, the moving party must prove that her rights have been prejudiced and that she was denied a fair hearing. *Robbins v. Day*, 954 F.2d 679, 685 (11th Cir.), *cert. denied*, 506 U.S. 870, 113 S.Ct. 201, 121 L.Ed.2d 143 (1992).

Movant nowhere contends that she was denied a fair hearing. Moreover, the record unequivocally establishes that she was afforded the full opportunity to submit evidence and call witnesses during the hearing. Movant thus seems to argue that she was denied a fair hearing based on the Arbitrator's factual findings. In general, however, disagreement with an arbitrator's factual findings does not constitute adequate grounds for vacating his decision as a court is limited to determining "whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Remmey*, 32 F.3d at 146 (*quoting Richmond*, 973 F.2d at 281) (citation omitted). The record reveals that the arbitrator fulfilled his responsibilities, and did so within the parameters of the agreement entered into by the parties. On this basis, the Court concludes that any gaffes in the Arbitrator's factual conclusions are insufficient to overturn his decision.[4]

## D. Flawed Award

Movant finally alleges that the form of the award was flawed. Specifically, she argues that the Arbitrator's decision was inconsistent in that he notes, after reciting her injuries, that the Dalkon Shield caused some, but not all, of her injuries.

This argument is not well founded. The Arbitrator's decision reveals that he made two unambiguous conclusions as to causation—that the Dalkon Shield caused her minor episodes of PID and that sexually transmitted diseases caused the infections in her ovaries and fallopian tubes requiring the hysterectomy and resulting in traumatic stress disorder and other complications. On this basis, the Arbitrator concluded as follows:

---

4. Even if the Court examined the contested conclusions, Movant is apparently incorrect in nearly all of her assertions. For example, during the 1970's, the record reveals that Movant was diagnosed with gonorrhea, trichomoniasis and venereal warts, or condyloma, which has been connected with HPV. *See* Medical Records Tabs 10, 16, 17, 30. Second, the Arbitrator correctly ruled that Movant suffered bilateral injuries as the record reveals that she suffered from an abscess on the *right* tube and distention of the *left* tube (hydrosalpinx). Finally, Movant offered no evidence rebutting the testimony of a Trust expert that Movant had chlamydia.

Movant *is* correct is her contention that she was never diagnosed with endometriosis, as noted in paragraph six of the Arbitrator's decision. Reading the entire decision, however, leads the Court to conclude that the Arbitrator merely confused two similar terms—endometritis and endometriosis. Movant was diagnosed with only the former, and the Arbitrator correctly noted this fact later in his decision. *See* Movant Mem., Arbitration Decision ¶ 16.

## CONCLUSIONS OF LAW

That the claimant, Irene Germany, was damaged with pain, suffering and disability because of the insertion and retention of the Dalkon Shield defective I.U.D. in her body in the amount of $15,000.00. An award of $15,000.00 is entered in favor of the claimant and against the Trust.

These Findings of Fact and Conclusions of Law and Award determine fully all issues to be decided pursuant to the agreement to submit to [Arbitration].

Movant's Mem., Arbitrator's Decision at 4. "This statement of an arbitral decision could hardly be more final and definite." *Remmey*, 32 F.3d at 150.

### E. Racial Discrimination

 At oral argument, Movant alleged that she has not been compensated adequately because she is black. Movant, however, has not provided a scintilla of evidence of racial discrimination during any stage of the claims resolution process, including the arbitration proceedings. Accordingly, the Court determines that this contention is meritless.

### III.

The Court concludes that the Movant has failed to establish that the arbitration process was so flawed that vacation of the award is warranted. Movant's discontent with the result of the arbitration proceedings simply is not the appropriate focus of this Court; indeed, it is well settled that she cannot be afforded a "second bite at the apple" merely because she hopes for a more favorable outcome. *Remmey*, 32 F.3d at 147. Any other conclusion would improperly transform the arbitrator's role into that of a court advisor and frustrate the policies underlying arbitration. Accordingly, Movant's motion to vacate the Arbitrator's award will be denied.