In re A.H. ROBINS COMPANY,
INC., Debtor.

Employer Tax Identification
No. 54–0486348.

Valeria Griffin and Debbie
King, Movants,

v.

Dalkon Shield Claimants
Trust, Respondent.

Bankruptcy No. 85–01307–R.

United States District Court,
E.D. Virginia,
Richmond Division.

Jan. 12, 1999.

588

James F. Szaller, Brown & Szaller, Cleveland, Ohio, for Valeria Griffin and Debbie King.

Orran Lee Brown, Richmond, Virginia, for the Dalkon Shield Claimants Trust.

### MEMORANDUM OPINION

SPENCER, District Judge.

This matter comes before the Court on the Motion of Valeria Griffin and Debbie King (the "Movants") to Vacate the Arbitrator's Decision which was reached following binding arbitration (the "Motion"). The Dalkon Shield Claimants Trust (the "Trust") opposes the Motion. Upon consideration of the par-

ties' pleadings, and after a hearing held on this matter on December 14, 1998, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

#### I. The Procedure

The Movants elected to process their Dalkon Shield Claims under Option 3 of the Claims Resolution Facility (the "CRF"). The Movants and Sylvia Johnson ("Johnson"), another claimant represented by the same attorney representing the Movants, rejected the Trust's evaluation of their claims and originally chose to litigate their cases against the Trust in a jury trial. A complaint was filed by the Movants and Johnson against the Trust in state court in Ohio in April of 1996. In February of 1998, the Movants and Johnson decided to switch their cases from litigation to binding arbitration against the Trust.

The Duke Private Adjudication Center appointed Kathleen M. Trafford (the "Arbitrator"), a litigator in Columbus, Ohio and former Deputy Chief Counsel in the Ohio Attorney General's office, to preside over the Movants' arbitration. The Movants' and Johnson's claims were the subject of an eight-day evidentiary hearing (the "Hearing") before the Arbitrator from August 19 to August 27 in the federal courthouse in Cleveland, Ohio.

#### II. The Claims

Ms. King claimed that her use of the Dalkon Shield caused her to have Pelvic Inflammatory Disease ("PID"), which in turn caused ectopic pregnancies in 1983 and 1990. The Trust claimed that she did not have PID while wearing the Dalkon Shield and that her later PID was caused by a sexually transmitted disease. Ms. Griffin asserted that her use of the Dalkon Shield had caused PID and temporary infertility until July of 1979. The Trust contended that Ms. Griffin was not ovulating during that time, thus accounting for her infertility which had nothing to do with the Dalkon Shield. Ms. Griffin was not infertile and went on to have three children. Johnson claimed that the Dalkon Shield had

caused her to have salpingitis, an inflammation of the fallopian tube, several ectopic pregnancies, and permanent infertility. The Trust contended that her complications resulted from a condition known as salpingitis isthmica nodosa ("SIN"), which is not related to the Dalkon Shield or any inter-uterine device ("IUD").

## III. Evidentiary Rulings

Before the Hearing, counsel for the Movants and Johnson indicated that he intended to offer as exhibits old internal A.H. Robins ("Robins") documents which were excerpts from depositions of several former Robins employees, and intended to offer testimony of Dr. Howard Tatum and Dr. Keith Roberts from a 1985 trial against Robins. This evidence appeared to relate only to the question of whether the Dalkon Shield was a legally defective product, and Rule 37 of the First Amended Rules Governing Arbitration (the "Arbitration Rules") removes the defect issue from every arbitration case, thus precluding introduction of any evidence on that issue. On July 27, 1998, the Trust filed two motions in limine asking the Arbitrator to exclude these proffered materials from the Hearing. In a telephone conference on August 10, 1998, the Arbitrator granted the Trust's motions to exclude product defect materials from the evidence at the Hearing. At Movants' request, shortly before the Hearing, the Arbitrator reconsidered her ruling, but again ruled the material to be inadmissible. The Hearing then proceeded forward.

## IV. Hearing Results

On September 25, 1998, the Arbitrator issued a thirty-six page opinion. The Arbitrator reviewed the testimony of the eleven witnesses called by the Movants, their many exhibits, and the testimony of the four experts called by the Trust. The Arbitrator gave Movants and Johnson the benefit of the presumption of causation required by the Fourth Circuit's decision in *Reichel v. Dalkon Shield Claimants Trust*, 109 F.3d 965 (4th Cir.1997).[1] The Arbitrator accepted the

Movants' argument that the presumption could be rebutted by the Trust only with evidence of an alternative cause of injury other than the Dalkon Shield, and not by general causation evidence inconsistent with the proposition that the Dalkon Shield elevated the risk of harm in its users. The Arbitrator found in favor of Johnson and awarded her $175,000.00 in damages. The Arbitrator reached that result by concluding that because the actual cause of the SIN condition is unknown, the Trust had failed to show an alternative cause other than the Dalkon Shield, thus leaving the *Reichel* presumption unrebutted and allowing Johnson to recover damages based on the strength of the presumption.

The Arbitrator found against both of the Movants. As for Ms. King, the Arbitrator concluded that she did not have PID before 1980 and that her injuries were most likely caused by a sexually transmitted disease. This alternative cause rebutted the *Reichel* presumption of causation, leaving Ms. King with her original burden of proving by a preponderance of the evidence that the Dalkon Shield had caused her harm. Based upon the medical records and expert testimony, the Arbitrator concluded that Ms. King had not carried her burden because she did not contract PID until years after her Dalkon Shield use. As for Ms. Griffin, the Arbitrator concluded that she had also failed to carry her burden, finding that it was more probable than not that her infertility was caused by anovulation rather than the Dalkon Shield. The Arbitrator further found that Ms. Griffin's perisalpingitis resulted from an inflammatory reaction to a 1975 hystersalpingogram (a medical test in which dye is injected in the fallopian tubes) and not from use of the Dalkon Shield. These alternative causes both rebutted the presumption of causation and prevented Ms. Griffin from recovering.

## V. Movants' Present Motion and Trust's Response

Johnson was apparently satisfied with the evidentiary rulings and the Arbitrator's final

---

1. The Fourth Circuit held, in *King v. Dalkon Shield Claimants Trust,* Case No. 98–1395, 1998 WL 537715 (4th Cir. August 17, 1998), that the presumption of causation in § G.2 of the CRF, which was held applicable to the Alternative Dispute Resolution program in *Reichel*, also applies to cases in arbitration against the Trust under § E.5(a) of the CRF.

decision as she did not join in this Motion. The Movants, on the other hand, were not satisfied. On October 16, 1998, the Movants filed this Motion challenging the Arbitrator's decisions on the evidence and the ultimate results. Though the relief is not specified, Movants presumably want the Court to send their two claims back to the Arbitrator for another hearing.[2] Movants base their Motion upon Rule 44(a)(3) of the Arbitration Rules, which allows judicial review of an arbitrator's decision where the movant can show that the arbitrator "was guilty of abuse of discretion in . . . refusing to admit competent and relevant evidence." Movants contend that the Arbitrator abused her discretion in granting the Trust's two motions in limine and excluding the old Robins documents and testimony.

In the Motion, the Movants assert that the relevant excluded causation evidence severely prejudiced their ability to evidence how and why the Dalkon Shield injured them. The testimony and exhibits were offered by the Movants to evidence the Dalkon Shield's propensity to cause disease (and not to prove defect), as well as to sustain their evidentiary burden. Because the evidence was excluded, Movants claim that they were unable to establish by a preponderance of the evidence that the Dalkon Shield caused their injuries. Specifically, the following items were excluded from evidence as a result of the Arbitrator's ruling for the Trust on the motions in limine. What follows each item is the Movants' proffer as to what this evidence would have proven:

1) 1985 trial testimony of Dr. Tatum and Dr. Roberts: would have described and explained the tests they performed to determine that the Dalkon Shield had a propensity to cause disease;

2) deposition of Kenneth Moore, project manager for the Dalkon Shield: would have testified that the use of a braided string on an IUD would support bacterial growth, and that Robins understood yet ignored the importance of an outer sheath to protect against bacteria exiting and causing disease;

3) videotape of Dr. Klioze, chemist at Robins: would have testified that the Dalkon Shield was not fully tested by Robins and was sold without determining the long-term stability of the tailstring, and that the inventor admitted that the tailstring had a tendency to wick and therefore cause disease;

4) videotape of Dr. Martin, chemist at Robins: would have testified that the tailstring was subject to hydrolysis and that it could break down in the body;

5) videotape of Elderin Crowder, employee of Chapstick: would have testified that he performed a simple experiment, determined that the Dalkon Shield wicked, informed his superiors that the wicking could cause bacterial infections, but was ignored;

6) videotape of Daniel French, president of Chapstick: would have testified that even though bacteria could escape from pinholes in the sheath, employees never used microscopes to check the sheath of the tailstrings around the knot to see whether there was breakage;

7) videotape of Dr. Earl, an original owner of Dalkon Corporation: would have testified that he noted a condition of septic infected abortion in women who had conceived while wearing the Dalkon Shield, felt that the infection was related to the tailstring, and so advised Robins;

8) videotape of Roger Tuttle, in house Robins attorney: would have testified that he was ordered to and did destroy Robins documents which were legally damning where Robins' defense concerned the lack of testing;

9) videotape of Dr. Tankersley, research doctor at Robins: would have testified that his in-house studies proved that the Dalkon Shield wicked bacteria from one end of the string to the other, thereby causing disease;

---

**2.** Counsel for the Movants argues that if the case is remanded, a new arbitrator should be chosen who will be able to take a fresh and unbiased look at all of the evidence. In making its ruling today, the Court does not need to reach the issue of whether a new arbitrator should be selected upon remand of an arbitration case.

10) Robins documents, including adverse reaction complaints: would evidence foreseeability, notice, and that the Dalkon Shield caused disease.

Movants argue that the Arbitrator was deprived of the above information which concerns how, why, and how often the Dalkon Shield caused injury. Movants claim that their burden to prove by a preponderance of the evidence that the Dalkon Shield caused their injuries was severely hampered by their inability to introduce this relevant causation evidence.

In its response filed on November 12, 1998, the Trust argues that the Arbitrator properly excluded the evidence because all of the evidence pertained to product defect while none of it pertained to the issue of whether the Dalkon Shield had caused the Movants' injuries. The materials related only to product defect issues, and not to causation issues. The Trust also argues that even if the evidence could possibly have related to a legitimate causation issue in the case, excluding it did not deprive the Movants of a fundamentally fair hearing. The Trust contends that the important information of how, why, and how often the Dalkon Shield caused injury was heard by the Arbitrator through Movants' experts.

Following the hearing held on December 14, 1998, where counsel for both the Movants and the Trust presented argument, the Court took the matter under advisement.

### CONCLUSIONS OF LAW

**I. Judicial Review of an Arbitration Decision**

**A. Arbitration Rules and Case Law**

▮ To vacate an arbitrator's decision, the Court must find one of the four grounds identified in Rule 44(a) of the Arbitration Rules:

1. The decision was procured by corruption, fraud or undue means.
2. The arbitrator was biased or corrupt.
3. The arbitrator was guilty of abuse of discretion in refusing to postpone the hearing, refusing to admit competent and relevant evidence, or engaging in misconduct that prejudiced the moving party.
4. The arbitrator exceeded his or her powers, or so exercised them such that he or she failed to make a final, definite and unambiguous decision.

According to Arbitration Rule 44(d), these criteria are to be interpreted consistently with the provisions of § 10 of the Federal Arbitration Act, 9 U.S.C. § 10. The movant seeking to vacate a decision bears the burden of showing one of these grounds for reversal. *See Germany v. Dalkon Shield Claimants Trust,* 197 B.R. 525, 527 (E.D.Va.1995).

▮ This Court has addressed the grounds for judicial review of an arbitrator's decision many times. In *O'Connor v. Dalkon Shield Claimants Trust,* 158 B.R. 640 (Bankr.E.D.Va.1993), the Court explained:

> The standard of review for arbitration decisions is extremely deferential. Courts may vacate the award only upon a showing of one of the grounds listed in the Arbitration Act, or if the arbitrator acted in manifest disregard of the law. An arbitration decision is enforceable even when based on misinterpretation of the law, faulty legal reasoning, or erroneous legal conclusions, and may reversed only when the arbitrator correctly understands and states the law but proceeds to disregard it.

158 B.R. at 642. This narrow scope of judicial review is necessary to accord the arbitration process a degree of finality and to keep it from becoming only an advisory one. This Court will not overturn an arbitration decision merely because the Court would have reached a different conclusion if presented with the same facts. Instead, the Court's role is limited to determining whether the arbitration process was itself flawed. *See MacLeod v. Dalkon Shield Claimants Trust,* 213 B.R. 468, 470 (E.D.Va.1997).

**B. Court's Decisions on Evidentiary Challenges**

▮ This Court has addressed the particular argument which the Movants make here. To vacate an arbitrator's decision on the basis of an evidentiary ruling, the moving party must prove that his or her rights have been prejudiced and that he or she was

denied a fair hearing. *See Germany,* 197 B.R. at 529. The Court has explained that disagreement with the arbitrator's evidentiary finding is not adequate grounds for vacating the decision. The Court is limited to determining whether the arbitrator did the job he or she was told to do, not if it was done well, or correctly, or reasonably, but simply whether it was done. *Id.*

■ The arbitrator is "the judge of the admissibility of all evidence submitted during the hearing." *Briggs v. Dalkon Shield Claimants Trust,* 211 B.R. 199, 201 (E.D.Va. 1997); *see also Maksimuk v. Dalkon Shield Claimants Trust,* 223 B.R. 492, 494 (E.D.Va. 1998). As set out in both of these decisions, to obtain any review of an arbitrator's ruling admitting or excluding evidence, the movant must satisfy a two-part test and show both of the following: 1) that the arbitrator's evidentiary ruling was erroneous, and 2) that the error deprived the movant of a fundamentally fair hearing. Without a showing of both of the elements, the Court will not revisit an arbitrator's evidentiary rulings. In both *Briggs* and *Maksimuk,* the Court concluded that the plaintiffs simply disagreed with the arbitrator's rulings and could not show either of the required elements.

## II. Movants Have Not Satisfied Two-Part Test

### A. Arbitrator's Evidentiary Rulings Were Not Erroneous

■ It is this Court's opinion that the Arbitrator's evidentiary rulings here were not erroneous. All of the material which the Movants wished to be introduced into evidence pertained to the issue of product defect, and as stated above. Arbitration Rule 37 excludes any evidence relating to this issue. None of the excluded evidence pertained to the issue of whether the Dalkon Shield had caused the Movants' injuries. The excluded testimony and exhibits dealt with alleged injuries other than the types claimed by the Movants, and none of the evidence sheds any light on whether the Dalkon Shield more likely than not caused the injuries claimed by the Movants. Thus, the Arbitrator's exclusion of the evidence was proper because the focus of the evidence and

Hearing was on specific causation as to the Movants and not on general product defect, an issue already conceded by the Trust.

The Movants argue that the excluded evidence relates to causation issues and not to product defect issues. The Court finds that this claim amounts to little more than a disagreement with the Arbitrator's rulings. Regardless of the Movants' view of the evidence, and as stated above, the Arbitrator was the judge of the admissibility of all of the evidence submitted during the Hearing. *See Briggs,* 211 B.R. at 203. Even though the Movants have voiced objections to the rulings here, they have failed to demonstrate that these decisions were erroneous. Certainly an argument can be made that the excluded material relates to causation, but a similar argument can be made that the excluded material relates to product defect. The Movants have not proven to the Court that the Arbitrator's decision to accept the argument that the excluded material relates to product defect was erroneous. The Arbitrator decided that the material related to product defect and not to causation, and the Movants' disagreement with this decision is not sufficient grounds to find that the decision was erroneous.

The standard of review for arbitration decisions provides that an overly expansive review of such decisions would undermine the efficiencies which arbitration seeks to achieve. *See Germany,* 197 B.R. at 528 n. 2. The Court's role is limited to determining whether the arbitration was itself flawed, and the Court concludes it was not here. The fact that the Court may have reached a different decision in terms of the excluded evidence would also not be sufficient reason to overturn the Arbitrator's evidentiary rulings. The Arbitrator did the job she was supposed to do, and her decisions were reasonable, proper, and not erroneous.

### B. Movants Were Not Deprived of a Fundamentally Fair Hearing

■ Even if the Court were to find that the Arbitrator's evidentiary rulings were erroneous, the Movants have not persuaded the Court that they were deprived of a funda-

mentally fair hearing. The Movants claim that their most persuasive evidence is the material which was excluded, especially the employee admissions which would have proven foreseeability and causation and would have bolstered their experts' opinions and credibility. The Movants argue that excluding this evidence prejudiced their ability to carry their burden. The Court disagrees with this argument.[3] First, there is some dispute as to whether the alleged admissions of Robins' employees were actual admissions. The Trust argued that these statements were actually opinions and not admissions. In addition, the deposition testimony which was excluded contained only excerpts and did not paint a full picture of the testimony.

More importantly, the key information of how, why, and how often the Dalkon Shield caused injury was actually heard by the Arbitrator through Movants' experts. Dr. Connell testified on behalf of Movants on her opinion that the Dalkon Shield tailstring was capable of wicking bacteria from the vagina to the uterus; she also referred to articles by Dr. Tatum, her husband, whose testimony was excluded. Another of Movants' experts, Dr. Friedman, did the same, testifying that the Dalkon Shield caused PID because vaginal flora gained access to the uterus through the tailstring. Another expert, Dr. Haber, testified that she found bacteria inside five of the eleven Dalkon Shield tailstrings which she studied. The Movants also obtained how, why, and how often evidence through cross-examination of Dr. Sogor, one of the Trust's experts. Thus, the Arbitrator had more than ample evidence before her on the causation issues. The Trust contends that she knew as much about the theories on the wicking and hydrolysis of the Dalkon Shield tailstring as she would have known if the excluded evidence had been admitted.

The Court finds that the excluded evidence would not have altered the Arbitrator's analysis or decision with respect to either of the Movants. As to Ms. King, the Arbitrator concluded that she did not have PID until 1980, more than six years after her Dalkon

Shield had been removed. This conclusion has nothing to do with the excluded evidence and has everything to do with the facts contained in Ms. King's admitted medical records. As to Ms. Griffin, the Arbitrator concluded that her temporary infertility was caused by a failure to ovulate and not by PID. She relied on the medical evidence and on the opinions of Ms. Griffin's treating physicians, who thought that she was anovulatory. The Arbitrator's analysis would not have changed if the excluded evidence had been introduced. The Arbitrator analyzed each Movant's causation case specifically, and piling up more evidence of product defect would not change the fact that the Arbitrator concluded that the Dalkon Shield simply did not cause these injuries.

Finally, Movants seem to argue that because this excluded material was contained in the Robins' document depository, the material should have been allowed into evidence. Again, the Court finds this argument to be meritless. The documents in the depository were certainly available for inspection, but being available for inspection does not translate into being admissible in the arbitration hearing. The fact that the material was in the depository did not require the Arbitrator to admit the material into evidence; the Arbitrator had to make a ruling on each piece of proposed evidence. As the Trust points out, the Movants could have elected to stay in state court litigation and could have tried to have the excluded material admitted there. The goal of the arbitration process is to streamline the procedure and keep out all irrelevant product defect material, as the Arbitrator properly did here.

### CONCLUSION

The Movants' burden here is two-fold: they must prove that the decision of the Arbitrator to exclude the material was erroneous and that exclusion of this material deprived them of a fundamentally fair hearing. The Court finds that the Movants have failed to carry their burden. The excluded material relates to product defect and was properly not admitted into evidence by the

---

3. The issues of foreseeability and notice and proximate cause are not in dispute here as product defect has already been conceded by the Trust. The only issue of import here is whether

the Dalkon Shield caused the Movants' injuries, and this issue was properly focused upon by the Arbitrator.

**594**

Arbitrator in accordance with Arbitration Rule 37. Thus, the Arbitrator's evidentiary rulings were not erroneous because general disagreement by the Movants with the rulings is not sufficient grounds to find the rulings to be erroneous. Even if the Court were to find that the rulings were erroneous, the Movants' Motion would still fail because the Court finds that the Movants were not deprived of a fundamentally fair hearing. The Arbitrator heard the information of how, why, and how often the Dalkon Shield caused injury through the Movants' experts. In addition, the excluded material would not have altered the Arbitrator's decision with respect to either of the Movants. The Arbitrator properly focused the evidence and Hearing on the issue of whether the Dalkon Shield caused the Movants' injuries and found, based on the evidence, that the Dalkon Shield was not the cause. Piling up the paper relating to product defect and notice and knowledge would not alter the medical evidence upon which the Arbitrator relied and which lead her to her decision. For these reasons, the Movants' Motion must be denied. An appropriate Order will be entered simultaneously herewith in conformity with this Memorandum Opinion.

### ORDER

This matter comes before the Court on the Motion of Valeria Griffin and Debbie King (the "Movants") to Vacate the Arbitrator's Decision which was reached following binding arbitration (the "Motion"). The Dalkon Shield Claimants Trust (the "Trust") opposes the Motion. In February of 1998, the Movants decided to switch their cases from state court litigation to binding arbitration against the Trust. The Movants' claims were the subject of an eight-day evidentiary hearing (the "Hearing") before Arbitrator Kathleen M. Trafford from August 19 to August 27 in the federal courthouse in Cleveland, Ohio. The Arbitrator found against both of the Movants. On October 16, 1998, the Movants filed this Motion challenging the Arbitrator's decisions on the exclusion of certain evidence and the ultimate results. Movants base their Motion upon Rule 44(a)(3) of the Arbitration Rules, which allows judicial review of an arbitrator's decision where the movant can show that the arbitrator "was guilty of abuse

of discretion in ... refusing to admit competent and relevant evidence."

The Movants' burden here is two-fold: they must prove that the decision of the Arbitrator to exclude the material was erroneous and that exclusion of this material deprived them of a fundamentally fair hearing. The Court finds that the Movants have failed to carry their burden. The excluded material relates to product defect and was properly not admitted into evidence by the Arbitrator in accordance with Arbitration Rule 37. Thus, the Arbitrator's evidentiary rulings were not erroneous because general disagreement by the Movants with the rulings is not sufficient grounds to find the rulings to be erroneous. Even if the Court were to find that the rulings were erroneous, the Movants' Motion would still fail because the Court finds that the Movants were not deprived of a fundamentally fair hearing. The Arbitrator heard the information of how, why, and how often the Dalkon Shield caused injury through the Movants' experts. In addition, the excluded material would not have altered the Arbitrator's decision with respect to either of the Movants. For these reasons, the Movants' Motion must be denied.

In conformity with a Memorandum Opinion this day entered, it is ORDERED, ADJUDGED, and DECREED that the Motion be, and it hereby is, DENIED.