In re A.H. ROBINS COMPANY, INCORPORATED, Debtor.

Employer Tax Identification No. 54–0486348.

Barbara Rubens, Movant,

v.

Dalkon Shield Claimants Trust, Respondent.

No. 85–01307–R.

United States District Court, E.D. Virginia, Richmond Division.

March 30, 1999.

Roy L. Mason, Mason, Ketterman & Morgan, Annapolis, Maryland, for movant.

Orran L. Brown, Richmond, Virginia, for the Dalkon Shield Claimants Trust.

### MEMORANDUM OPINION

SPENCER, District Judge.

This matter is before the Court on two Motions: 1) the Motion of Barbara Rubens, the Claimant, to Vacate, Modify, or Correct the Arbitrator's Decision, and 2) the Claimant's Motion for Leave of Court to Take Deposition. The Dalkon Shield Claimants Trust (the "Trust") opposes both Motions. Upon consideration of the parties' pleadings, and after a hearing held on this matter on February 18, 1999, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

**I. Arbitration Proceedings**

In March of 1973, Dr. Myron Steinberg inserted a Dalkon Shield (the "Shield") in Ms. Rubens' uterus. Fourteen years later, in October of 1997. Dr. Winston Paley removed that same Shield. Upon removal of the Shield, Dr. Paley diagnosed Ms. Rubens with pelvic inflammatory disease ("PID"), as evidenced by a right tubal ovarian abscess.

Ms. Rubens elected to process her Dalkon Shield Claim under Option 3 of the Claims Resolution Facility (the "CRF"). She originally attempted to litigate the matter under § E.5(b) of the CRF; however, after changing representation three times, Ms. Rubens eventually agreed to binding arbitration under CRF § E.5(a). The final arbitration hearing was set for June 22, 1998.

Prior to the final arbitration hearing and at the request of the Trust, Blair C. Fensterstock (the "Arbitrator") ordered Ms. Rubens to submit to a chlamydia titer test. The test was performed on June 3, 1998, and was sent to the Infectious Disease Laboratory at Indiana University. On that same day, Ms. Rubens voluntarily submitted to a second titer test, and the results of this test were sent to Quest Labs in New York. Although both tests were performed on the same day, the Indiana University test result returned positive for genital chlamydia, while the Quest Labs test result returned negative.

In June of 1998, Ms. Rubens sought a continuance of the final arbitration hearing so that she could retain her current legal representation. The request was granted, and on September 14, 15, and 17 of 1998, the Arbitrator heard her claim. The parties at the hearing did not dispute the fact that Ms. Rubens had PID; instead, the Arbitrator focused his decision on whether Ms. Rubens sustained her burden of proving that the Shield was the proximate cause of the PID, and whether she sustained compensable damages.

At the hearing, Ms. Rubens argued that the positive test result from the Indiana University lab resulted from a cross-reaction with a strain of respiratory chlamydia. This cross-reaction, she contended, caused

her to test positive for genital chlamydia. Ms. Rubens further argued that bacteria was allowed to "wick" up the string of the Shield while in her uterus, and this bacteria in turn caused the onset of PID. In support of her position, Ms. Rubens called upon Dr. Oscar Dodek and Dr. Paley to testify as expert witnesses at the hearing.

The Trust alleged that Ms. Rubens' PID could not have been caused by the Shield because "biofilm" precludes "wicking" after a period of time, and argued that genital chlamydia most likely caused Ms. Rubens' PID. The Trust contended that, because the Shield did not cause Ms. Rubens' PID, it was not subject to liability. To support its theories of "biofilm" and causation, the Trust called upon Dr. Martin Wilder and Dr. Mary Jane Minkin to testify as expert witnesses at the hearing.

The Arbitrator found that there were two conflicting titer tests, but ultimately ruled in favor of the Trust. He issued his decision denying Ms. Rubens' claim on October 1, 1998. In his decision, he noted that Ms. Rubens failed to prove, by a preponderance of the evidence, that she wanted to have children in 1987 or thereafter or that she is infertile. Furthermore, the Arbitrator stated that Ms. Rubens failed to produce any verifiable evidence, beyond mere speculation, of her income or lost income during the relevant period. On the issue of causation, the Arbitrator found that Ms. Rubens failed to prove, by a preponderance of the evidence, that the Shield was the cause in fact or proximate cause of her PID and that she further failed to rebut adequately the "biofilm" theory.

Shortly after the Arbitrator issued his decision, Ms. Rubens filed a Motion for Leave of Court to Take the Deposition of Dr. Robert Jones, a manager of the Indiana University laboratory. The parties agreed to have the Arbitrator decide the Motion, and on October 26, 1998, the Arbitrator denied Ms. Rubens' Motion. He determined that Ms. Rubens failed to prove the unavailability of Dr. Jones, as required under Rule 27 of the Federal Rules of Civil Procedure.

## II. The Claimant's Arguments

On October 21, 1998, Ms. Rubens filed the Motion to Vacate, Modify, or Correct the Arbitrator's Decision, in which she raises a host of allegations of error with respect to the Arbitrator's decision. Generally, Ms. Rubens contends that the Arbitrator's decision should be vacated for the following reasons:

1) the Arbitrator's decision was ambiguous and did not fully determine the issues:

2) the Arbitrator exceeded his powers; and

3) the Arbitrator's decision was procured by undue means.

In the alternative, Ms. Rubens seeks to have the Arbitrator's decision corrected, or modified, and remanded for a "new trial" on the issue of damages only. Ms. Rubens believes that this alternative action is warranted because she contends that the Arbitrator based his decision on evidence outside of the record. Ms. Rubens additionally filed the Motion for Leave of Court to Take the Deposition of Dr. Robert Jones, a non-party who did not testify at the arbitration hearing. Although the Arbitrator denied this Motion, she requests reconsideration of this issue.

### A. Decision Was Ambiguous

Ms. Rubens contends that the Arbitrator's decision was not final, definite, and unambiguous as Arbitration Rule 44 of the Second Amended Arbitration Rules (the "Rules") requires. Ms. Rubens further contends that the decision did not fully determine the issues to be decided as Arbitration Rule 43 requires. Where the parties raised only two potential causes of the PID, Ms. Rubens argues that the Arbitrator's ruling "makes no sense." Instead, she argues, the Arbitrator *had* to decide which of the two causes initiated the PID

in 1987. Because the Arbitrator failed to make such a determination, Ms. Rubens contends that "the process was flawed."

Ms. Rubens further claims that the decision was ambiguous because the Arbitrator made two "glaring" mistakes. First, she alleges that the Arbitrator misconstrued her argument with respect to causation of her injury. Second, she alleges that the Arbitrator found that one of her medical experts, Dr. Paley, did not testify to a reasonable medical certainty.

## B. Arbitrator Exceeded His Powers

Ms. Rubens contends that the Arbitrator exceeded his power by allowing, over objection, the testimony of the Trust's two experts, Dr. Minkin and Dr. Wilder. She alleges that his actions were in violation of Rules 44(a)(3) and (4). According to Ms. Rubens, this testimony resulted in fundamental unfairness because, she claims, their testimony was not properly before the Arbitrator.

In particular, Ms. Rubens contends that Dr. Wilder was not identified as an expert, nor did he establish any expertise. Ms. Rubens also vehemently argues that the Arbitrator erred by allowing Dr. Wilder to testify about the matter of the titer test. She contends that the Trust gave no notice that Dr. Wilder would testify on such a topic; further, she contends that it was unfair to expect her to cross-examine Dr. Wilder about titers on the last day of the arbitration hearing. The failure to restrict Dr. Wilder's testimony, she contends, is evidence that the Arbitrator did not "do his job."

With respect to Dr. Minkin, Ms. Rubens contends that the Arbitrator should not have allowed her to testify and opine that Ms. Rubens had genital chlamydia. Because he allowed this testimony, the Arbitrator allegedly exceeded his powers.

## C. Decision Procured by Undue Means

Ms. Rubens argues that the Arbitrator's decision was procured by undue means.

She alleges that the Trust represented to the Arbitrator that the "positive" chlamydia titer test was, to a reasonable degree of medical certainty, proof that Ms. Rubens at one time had genital chlamydia. She contends that the Trust first informed the Arbitrator about the test months before the arbitration hearing during a phone conference. Ms. Rubens' argument apparently implies that the Trust surreptitiously attempted to sway the Arbitrator's decision in some manner by disclosing the test results.

Ms. Rubens argues that the Trust carried on other clandestine activities beyond the mere disclosure of the titer test results. She alleges that the Trust attempted to confuse the record by incorporating two experts with similar names, both referred to as Dr. Jones. Specifically, she alleges that Dr. Minkin was allowed to testify, over objection, as to the reputation and abilities of Dr. Robert Jones, a doctor at the Indiana University lab. Because Dr. Robert Jones differed from Dr. Richard Jones, an OB/GYN doctor identified in the Trust's pleadings but not called to testify, Ms. Rubens believes that the Trust attempted to confuse the situation. Ms. Rubens also argues that the Arbitrator inappropriately helped the Trust put on its defense.

## D. Additional Materials Submitted by the Claimant

Finally, Ms. Rubens wishes to submit two additional items along with her Motions: 1) an affidavit from a Dr. Julius Schachter; and 2) a Supplemental Memorandum submitted in light of "new" evidence. Ms. Rubens offers the affidavit of Dr. Schachter in support of her claim that the Trust mislead the Arbitrator. The Memorandum contains an excerpt from testimony given by Ms. Barbara Van Der Pol, an employee of the Indiana University lab which performed Ms. Rubens' titer test. This testimony was taken during a separate and wholly unrelated Dalkon Shield arbitration dispute in which the

Trust was a defendant. Ms. Rubens contends that this testimony supports her theory that the Trust knew that Ms. Rubens' positive titer test resulted from cross-reactivity.

### CONCLUSION'S OF LAW

### I. Judicial Review of an Arbitration Decision

■ In order to vacate an arbitrator's decision concerning a Dalkon Shield claim, a movant must prove at least one of the four grounds identified in Rule 44(a) of the Arbitration Rules:

1. The award was procured by corruption, fraud, or undue means.

2. The arbitrator was biased or corrupt.

3. The arbitrator was guilty of abuse of discretion in refusing to postpone the hearing, refusing to admit competent and relevant evidence, or engaging in misconduct that prejudiced the moving party.

4. The arbitrator exceeded his ... powers, or so exercised them such that he ... failed to make a final, definite, and unambiguous award.

Arbitration Rule 44(a). An arbitrator's decision also may be vacated "where the arbitrator acted in manifest disregard for the law." *O'Connor v. Dalkon Shield Claimants Trust,* 158 B.R. 640, 642 (Bankr.E.D.Va.1993) (citing *Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 98 L.Ed. 168 (1953)).

■ This Court grants the arbitrator "substantial deference" on review. *E.g. Germany v. Dalkon Shield Claimants Trust (In re A.H. Robins Co., Inc.),* 197 B.R. 525, 527 (E.D.Va.1995). In fact, the level of abidance is thought to parallel that of extreme deference. *See O'Connor,* 158 B.R. at 642. Therefore, the Court may not vacate a decision simply because, given the specific facts, it does not agree with the arbitrator's conclusion. "Indeed, a reviewing court generally is not to reconsider the arguments and evidence proffered at the

hearing, rather, its 'role is limited to determining whether the arbitration process itself is flawed.'" *Germany,* 197 B.R. at 527 (quoting *Remmey v. PaineWebber, Inc.,* 32 F.3d 143, 151 (4th Cir.1994)). The Court, however, will not overturn every stone when reviewing such a process; it will simply determine "whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Germany,* 197 B.R. at 529 (quoting *Remmey,* 32 F.3d at 147) (finding that any gaffes within the arbitrator's factual conclusions were insufficient to overturn the decision).

### II. Analysis of Ms. Rubens' Contentions

Ms. Rubens seeks relief under Arbitration Rules 44(a) and (b). The Court will address each Rule separately, beginning with an analysis of Ms. Rubens' claims pertaining to Arbitration Rule 44(a).

### A. The Arbitrator's Decision Was Not Ambiguous

■ Ms. Rubens argues that the Arbitrator's decision "makes no sense" and was not final, definite, or unambiguous, because the Arbitrator failed to determine which of two causes actually caused her PID. Because of this "error," she contends that the process was flawed. The Court finds to the contrary. The plain, ordinary meaning of the language of Arbitration Rule 35(a)(3) is clear. The Rule requires that the claimant prove, by a preponderance of the evidence, that the Shield was the cause in fact and proximate cause of the injury alleged. While the Court recognizes that an initial presumption of causation may exist, such a presumption is extinguished when, as in this case, evidence suggesting another possible cause is put forth by the Trust. *See Reichel v. Dalkon Shield Claimants Trust (In re A.H. Robins Co., Inc.),* 109 F.3d 965 (4th Cir.1997).

■ As the language of Rule 35(a)(3) is clear, so too is the language of the Arbitrator's decision. Ms. Rubens did not meet her burden, and the Arbitrator clearly, fully, and unambiguously stated his opinion regarding causation. The Arbitrator was under no obligation to *choose* between the parties' contentions regarding causation.

Furthermore, the Arbitrator's decision clearly satisfies Arbitration Rule 43(d) in that it determined fully the issues to be decided pursuant to the Arbitration Agreement. The decision contained an adequate summary of the issues, the proceeding, witness testimony, the parties' contentions, and the Arbitrator's opinion explaining the decision. Quite simply, the decision contains no patent ambiguity.

Ms. Rubens also claims that the Arbitrator made two glaring mistakes. She alleges that the Arbitrator misconstrued her causation argument, and she additionally contends that the Arbitrator found that one of her medical experts did not testify to a reasonable medical certainty. The Court, again, finds to the contrary. Upon review of the Arbitrator's decision, the Court finds that the Arbitrator clearly and accurately summarized Ms. Rubens' causation argument in his decision. The Court also finds that the Arbitrator expressly stated in his decision that Dr. Paley did, in fact, testify to a reasonable medical certainty.

## B. The Arbitrator Did Not Exceed His Powers

■ Ms. Rubens also argues numerous evidentiary matters in her Motion. It has been stated that the arbitrator is "'the judge of the admissibility of all evidence submitted during the hearing.' There can be no judicial review of those rulings unless the claimant shows both that: (1) the arbitrator's evidentiary ruling was erroneous; and (2) the error deprived the claimant of a 'fundamentally fair hearing.'" *Maksimuk v. Dalkon Shield Claimants Trust (In re A.H. Robins Co., Inc.)*, 223 B.R. 492, 497 (E.D.Va.1998) (quoting

*Briggs v. Dalkon Shield Claimants Trust (In re A.H. Robins Co., Inc.)*, 211 B.R. 199, 203 (E.D.Va.1997)) (finding no error where the arbitrator did not abuse his discretion in determining an evidentiary matter).

■ The Court disagrees with Ms. Rubens' conclusions regarding the admissibility of Dr. Wilder's and Dr. Minkin's testimony. Dr. Wilder was offered and accepted as an expert in microbiology, immunology, and infection, and the Arbitrator accepted Dr. Minkin as a board certified obstetrician and gynecologist, who specializes in infectious disease. The Arbitrator properly and clearly found both Trust experts to be well-qualified to testify on the matters presented, including chlamydia and titer tests. The Arbitrator did not abuse his discretion under Rule 44(a)(3), nor did he exceed his powers under Rule 44(a)(4). It appears that Ms. Rubens' contentions rest on mere disagreement with the Arbitrator's decisions, rather than on actual error on the part of the Arbitrator. Disagreement with respect to the weight and relevancy of evidence, however, does not warrant action by the Court. *See Briggs*, 211 B.R. at 202 (finding a claimant's rights not to have been prejudiced, even where the arbitrator clearly erred).

■ Ms. Rubens claims that she was caught off guard by Dr. Wilder's testimony; however, this claim lacks credibility. Although Dr. Wilder testified on the last day of the arbitration hearing, Ms. Rubens had months to prepare for his cross-examination. In fact, Ms. Rubens' previous counsel questioned Dr. Wilder about chlamydia titers during a pre-hearing deposition on May 3, 1998; thus, she knew he might opine about chlamydia titers at the arbitration hearing. Furthermore, the Trust informed Ms. Rubens that Dr. Wilder would testify at the hearing in response to matters raised by Ms. Rubens' experts. It is logical and reasonable to assume then that Dr. Wilder might counter Dr. Paley's testimony on chlamydia

titers and "cross-reactivity" with his own views on chlamydia titers. The Arbitrator did not exceed his powers by allowing such testimony, and the Court will not question his conclusions.

## C. The Arbitrator's Decision Was Not Procured by Undue Means

 It is clear from the record and the parties' arguments that the results of the titer test were hotly in dispute. The Trust and its experts contended that the positive test result showed that Ms. Rubens' PID was caused by genital chlamydia, while Ms. Rubens and her experts contended that the positive test result was the result of cross-reactivity with a strain of common, respiratory chlamydia. Ms. Rubens claims that the Trust engaged in undue means by arguing that the positive test result established, to a reasonable degree of medical certainty, that Ms. Rubens had genital chlamydia. The Court disagrees with this claim. First off, Ms. Rubens did not object to the admissibility of the test result, and has essentially waived any argument regarding the test result. In addition, the test result was presented to the Arbitrator, and both sides had ample opportunity to present their interpretations of the result; the Trust certainly did not engage in undue means by arguing its position on the test result. There has been no showing by Ms. Rubens that the Trust's medical certainty argument was made in bad faith or through undue means. The Arbitrator assessed both sides carefully and properly reached a decision on these issues; it is not the Court's job to second guess the Arbitrator's assessment and conclusion. Ms. Rubens challenges the Arbitrator's interpretation of the test result; this challenge is seen by the Court as no more than a disagreement with the Arbitrator's conclusions as Ms. Rubens has presented no viable grounds for vacation.

In addition, Ms. Rubens contends that the Arbitrator's decision was procured by undue means in that the Trust revealed the results of the Indiana University test to the Arbitrator during a pre-hearing conference. Ms. Rubens, however, is mistaken with respect to the time frame of the conference. The Trust disclosed this information only weeks before the then scheduled hearing date of June 22, 1998, and not months before the hearing as Ms. Rubens alleges. Irrespective of this oversight, the Court finds no evidence of questionable activity on the part of the Trust. The conference participants were the Trust, the Arbitrator, and Ms. Rubens' former counsel; nobody was left in the dark as all parties were adequately represented. In addition, the test was not performed in stealth: it was in fact ordered by the Arbitrator a few weeks prior to the then scheduled hearing. The test was a source of legitimate concern at the hearing; as stated above. Ms. Rubens even stipulated to its admissibility at the hearing. Moreover, although Ms. Rubens was aware of the grounds for this argument, it appears that Ms. Rubens failed to raise these issues with the Arbitrator. Therefore, the Court will not entertain argument on an issue raised here for the first time. *See Maksimuk,* 223 B.R. at 498.

Ms. Rubens also alleges that the Arbitrator's decision was procured by undue means in that the Trust put forth inadmissible testimony pertaining to Dr. Robert Jones of the Indiana University laboratory, who did not testify at the hearing. Because Ms. Rubens neglects to refer to specific instances within the record, the Court burdened itself with the arduous task of reviewing the hearing transcript for any evidence supporting her argument. The only true reference to Dr. Robert Jones appears in Dr. Minkin's testimony. However, Dr. Minkin merely testified about the trustworthiness of the Indiana University laboratory based only upon her own personal experience and knowledge. Her testimony about Dr. Jones' ability to manage a laboratory arose collaterally. She was not testifying for Dr. Jones or on his behalf. This was not improper testimony, and the Arbitrator properly found

Dr. Minkin's statements to be admissible. Further, the Court finds no merit in Ms. Rubens' argument that the Trust attempted to confuse the situation by referring to Dr. Richard Jones, an obstetrician from Connecticut who was not called to testify, in its pre-hearing disclosure documents. Ms. Rubens has presented no evidence of any confusion relating to these two doctors.

■ Ms. Rubens additionally claims that the Arbitrator inappropriately assisted the Trust in putting on its defense at the arbitration hearing. In support of this contention, Ms. Rubens cites to an instance where the Arbitrator asked the Trust to re-word a question posed to a witness. The Court disagrees with Ms. Rubens. An arbitrator's request of a party to rephrase a question does not rise to the level of inappropriate behavior or assistance.

### D. Court Will Not Modify the Arbitrator's Decision

In the alternative, Ms. Rubens seeks modification of the Arbitrator's decision. The Arbitration Rules allow for modification or correction of the arbitrator's decision where there was an obvious error in calculating the award, where the arbitrator based his decision on evidence outside the record, or where the decision or award was flawed. *See* Arbitration Rule 44(b). Ms. Rubens alleges that the Arbitrator took into account evidence outside the record. In particular. Ms. Rubens claims that the Arbitrator took into account improper testimony regarding Dr. Robert Jones of the Indiana University laboratory, testimony which she claims was outside the scope of the hearing. As stated above, however, the Court finds that this testimony was indeed proper. The Court, therefore, will not modify the Arbitrator's decision.

### E. Court Will Deny Motion for Leave to Take Deposition

■ Ms. Rubens requests leave to take the deposition of Dr. Robert Jones. In *Maksimuk,* this Court stated:

[a]rbitration would hardly be the efficient, expeditious means to adjudicate a Dalkon Shield claim ... if a claimant who is unhappy with the arbitrator's decision could then spend four months embroiling the ... Trust in ... proceedings ... on whatever is discovered in those proceedings. Arbitration is supposed to be final and binding, with the only exceptions being those specified in [Rule 44].

*Maksimuk,* 223 B.R. at 497 (denying the claimant's motion for leave to take discovery). Collateral issues, therefore, such as Ms. Rubens' Motion for Leave, will not be entertained by the Court. The Arbitrator has already ruled on this issue and Ms. Rubens has not provided the Court with a valid reason to reconsider the ruling.

Although Ms. Rubens claims that she was denied an opportunity to depose Dr. Robert Jones, the facts do not support her argument. The Trust and Ms. Rubens' previous counsel agreed in June of 1998 that, if a continuance of the hearing was granted to Ms. Rubens, no further depositions would be taken, including the deposition of Dr. Robert Jones. The Arbitrator granted Ms. Rubens a continuance with this understanding. Therefore, the Trust was justified in relying on this agreement and in denying Ms. Rubens' request for deposition made on October 15, 1998. Furthermore, it appears that Ms. Rubens had ample time to depose Dr. Robert Jones before the date of this agreement, but she chose not to do so at that time.

### F. Additional Materials Submitted by Claimant Will be Given No Weight

■ It appears that Ms. Rubens merely wishes to reargue the matters brought forth at the arbitration hearing. She wishes to continue presenting new evidence and depositions; unfortunately for Ms. Rubens, the Arbitrator has spoken, and the evidentiary doors have closed. The untested affidavit of Dr. Schachter

and the excerpt of Ms. Van Der Pol's testimony are peculiar in that they have no direct bearing on this case and present no new evidence to be considered. The Court, therefore, will not rest any weight upon either submission.

### CONCLUSION

The Court observes no reason in fact or law which should allow Ms. Rubens to ostensibly try her case a second time. The Court, therefore, will deny both Motions.