**In re A.H. ROBINS COMPANY, INCORPORATED, Debtor.**

**Carolyn C. O'CONNOR, Plaintiff,**

v.

**DALKON SHIELD CLAIMANTS TRUST, Defendant.**

**Bankruptcy No. 85–01307–R.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Aug. 31, 1993.

vacate an arbitration decision that denied her claim in its entirety. Claimant also asks the Court to order a rehearing before a different arbitrator.

## Statement of Facts

O'Connor is a timely Option 3 claimant who wore a Dalkon Shield IUD from 1973 until it was removed in 1981 after she developed endometriosis. Claimant rejected the Trust's initial offer of $9,000 and final offer of $3,500, opting for regular arbitration. The arbitrator conducted a hearing in January, 1993, and issued her decision on March 8, 1993, denying O'Connor's claim. Claimant moved to vacate the decision on June 11, 1993.

Claimant asks the Court to vacate the arbitration decision because the arbitrator allegedly violated provisions of the Complaint Resolution Facility (CRF) and the Trust's Rules Governing Regular Arbitration by requiring proof of product defect.[1] Claimant further argues that her expert offered sufficient proof of causation.[2] Finally, claimant avers that the arbitration decision, by requiring great expense to show proof of defect, destroys arbitration as a viable alternative to trial. The Court finds no basis for the first two assertions and need not address the third.

Michael L. Williams, Williams & Troutwine, P.C., Portland, OR, for the plaintiff.

Orran Lee Brown, Christian, Barton, Epps, Brent & Chappell, Richmond, VA, for the defendant.

## MEMORANDUM OPINION

Before MERHIGE, District Judge, and BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came before the Court on August 23, 1993, on a motion by Dalkon Shield Claimant, Carolyn C. O'Connor, to

## Grounds for Vacating an Arbitration Decision

To vacate an arbitrator's decision, the Court must find present at least one of four grounds listed in Rule XIV.B of the Trust's Rule Governing Regular Arbitration ("Trust Rules"). The four grounds are:

1. The award was procured by corruption, fraud or undue means.

2. The arbitrator was biased or corrupt.

3. The arbitrator was guilty of abuse of discretion in refusing to postpone the

---

1. Section G.12 of the CRF provides: *Product Defect*. In Options 1 and 2 of the Claims Resolution Process and Option 3, except for trial, product defect, including but not limited to design and warning defect, is not to be contested by the Trust and shall not be subject of proof.

2. G.13 of the CRF states: "[c]ausation will be an issue except as waived by the Trust." Since the Trust did not waive the causation requirement, Claimant was required to prove this element.

hearing, refusing to admit competent and relevant evidence, or engaging in misconduct that prejudiced the moving party. 4. The arbitrator exceeded his or her powers, or so exercised them such that he or she failed to make a final, definite, and unambiguous award.

Trust Rule XIV.F states that the grounds found in Trust Rule XIV.B are to be interpreted consistently with the identical provisions contained in § 10 of the Federal Arbitrations Act. 9 U.S.C. § 10.

 The standard of review for arbitration decisions is extremely deferential. *Upshur Coals Corp. v. UMWA, Dist, 31,* 933 F.2d 225, 228 (4th Cir.1991). Courts may vacate the award only upon a showing of one of the grounds listed in the Arbitration Act, or if the arbitrator acted in manifest disregard of the law. *See Wilco v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953): *Upshur,* 933 F.2d at 229; *Transit Cas. Co. v. Trenwick Reinsurance Co., Ltd.,* 659 F.Supp. 1346 (S.D.N.Y.1987), *affirmed* 841 F.2d 1117. An arbitration decision is enforceable even when based on misinterpretation of the law, faulty legal reasoning, or erroneous legal conclusions, and may be reversed only when the arbitrator correctly understands and states the law but proceeds to disregard it. *Upshur,* 933 F.2d at 229.

### Conclusions of Law

Claimant first alleges that the arbitrator exceeded her authority by requiring claimant to put on proof of product defect. Nowhere in the arbitrator's decision can such a demand be found. Instead, we think Claimant confuses the arbitrator's request for adequate proof of causation for a demand for proof of product defect.

Realizing that a Dalkon Shield is not the sole cause of endometriosis[3], the arbitrator correctly required more proof of causation other than coincidently using the device at the onset of the endometriosis. In attempting to prove a causal connection, claimant did introduce expert testimony. However, the arbitrator ruled that the medical studies relied upon by the expert were statistically insignificant, thus rendering the testimony worthless on the issue of causation.[4]

The arbitrator suggested other ways in which the claimant could have proven causation but the claimant failed to produce any further evidence. The arbitrator's suggestions included putting on evidence of the condition of the tail[5] and/or testimony by her treating physician[6] to prove that some link existed between the endometriosis and the Dalkon Shield.

Claimant misconstrues these suggestions as demands for proof of defect by relying on bits of decision language that are taken out of context. For example, claimant argues that the arbitrator's suggestion of introducing evidence describing the condition of the tail is a demand for proof of defect.[7] Claimant misreads the passage. When placed in context, the passage, as we stated above, is no more than a series of examples of how the claimant might have met her burden of proving that this defective product was a substantial contributing cause of her injury.

Finding no evidence of a requirement by the arbitrator for proof on the defective-

**3.** Indeed, the arbitrator notes in her decision that: "The vast majority of women who suffer from pelvic infections do not use IUDs ..." Arbitrator's Decision, 1.23, p. 4.

**4.** The medical studies relied upon analysis of approximately 100 patients.

**5.** There was some evidence as to the appearance of the tail however as the Arbitrator states in her decision: "Plaintiff testified that when the Dalkon Shield was removed, she saw the string and described only that it was longer that the string shown on a diagram of the Dalkon Shield. There was no testimony with respect to the condition of the tail itself." Arbitrator's Decision, 11.13–18 p. 4.

**6.** A letter from Dr. Lausterer, claimant's treating physician, was attached as an exhibit, but the arbitrator ruled: "that the letter did not mention the condition of the Dalkon Shield upon removal, nor in anyway support plaintiff's causation argument". Arbitrator's Decision, 11.20–22, p. 4.

**7.** Arbitrator's Decision, 11.13–14, p. 4.

ness of the Dalkon Shield, we dismiss claimant's first argument.

Claimant's second argument that her expert offered sufficient proof of causation fails as a matter of law. Whether the evidence offered is sufficient to carry the proponent's burden of proof is for the finder of fact. Claimant states no ground for error other than the bald assertion that the expert's evidence was sufficient.