In re A.H. ROBINS COMPANY,
INCORPORATED, Debtor.

Julia Ladner, Movant,

v.

Dalkon Shield Claimants
Trust, Respondent.

Bankruptcy No. 85–01307–R.

United States District Court,
E.D. Virginia,
Richmond Division.

April 20, 1999.

302

Jeffrey M. Motelson, Moskowitz, Passman & Edelman, New York City, for Movant.

Orran L. Brown, Richmond, VA, for Respondent.

Rene Ellis, Durham, NC.

# 304

## MEMORANDUM OPINION

SPENCER, District Judge.

This matter comes before the Court on two Motions filed by Julia Ladner (the "Claimant"): 1) a Motion to Vacate the Arbitrator's Decision (the "Motion to Vacate"), and 2) a Motion to Modify or Correct the Arbitrator's Decision (the "Motion to Correct"). The Dalkon Shield Claimants Trust (the "Trust") opposes both Motions. Upon consideration of the parties' pleadings, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

### I. The Arbitration Proceeding

#### A. Procedural History

The Claimant elected to process her Dalkon Shield claim under Option 3 of the Claims Resolution Facility (the "CRF"). The Claimant originally chose to litigate her case against the Trust in a jury trial under CRF § E.5(b), and this Court certified the Claimant to go forward with this litigation. The lawsuit was filed by the Claimant and her husband in the United States District Court for the Eastern District of New York, and it generated extensive discovery proceedings. The case was set for a jury trial on June 15, 1998, but the Claimant decided to switch her claim from litigation to arbitration under CRF § E.5(a). The Private Adjudication Center at Duke University, which has handled Dalkon Shield arbitration proceedings, appointed John J. Keigher (the "Arbitrator") to preside over the Claimant's arbitration. An arbitration hearing was held and evidence was taken on October 6 and 7, 1998, in the federal courthouse in New York City.

#### B. The Arbitration Hearing

To support her claim, the Claimant testified at the arbitration proceeding, as did her husband, Melvin Ladner. The Claimant also introduced the videotape testimony of Dr. Steinberger, and live testimony of Dr. Sidney Cohen, an expert medical witness with a specialty in neurology and psychiatry. The Trust called upon two experts to testify: Dr. Michael Arnoff, a practicing psychiatrist, and Dr. Richard Jones, an obstetrician and gynecologist. Extensive documentary evidence was also introduced, including hospital records, charts, treatment records, and medical reports.

According to the Claimant, she used three separate Dalkon Shields. The first one was inserted by Dr. Steinberger, her gynecologist, in 1969, and was removed because the Claimant desired to become pregnant. The Claimant delivered a son, her second child, on July 2, 1971. The Claimant's first child was carried to term and delivered before the first Dalkon Shield was inserted. In August or September of 1972, the same Dr. Steinberger inserted a second Dalkon Shield, which he removed on an unknown date in 1976. This second Dalkon Shield was also removed because the Claimant desired to have a third child: the delivery of this child was by cesarean section in October of 1977. The Claimant had a third Dalkon Shield inserted in January or February of 1978 by Dr. Steinberger; Dr. Steinberger testified that he removed this third Dalkon Shield a short time after the insertion. The medical records in the case indicate that, during the period from 1968 to 1983, the Claimant had four inter-uterine devices ("IUD") inserted in her uterus; three of the IUDs were Dalkon Shields and the fourth was a Copper 7 IUD.

According to the medical records and testimony, the Claimant began to manifest psychological difficulties at an early age. During the course of her life, the Claimant has suffered through bouts of depression, poor appetite, and poor sleep habits. The Claimant's unstable mental status culminated in a 1979 admission to the Staten Island Hospital for psychiatric examination and treatment. It was also noted that the Claimant had a strong family history of schizophrenia, and that the Claimant was diagnosed as suffering from this and

drug therapy was prescribed. Finally, in a decision made on March 31, 1981, a Social Security Administrative Law Judge determined that the Claimant was under a "psychotic" disability and was entitled to receive disability benefits; the Claimant continues to receive these benefits.

## C. Arguments Before the Arbitrator

During the arbitration proceeding, the Claimant alleged that she experienced the following injuries as a result of her Dalkon Shield use: uncontrolled bleeding, recurrent infections, excessive pain, pelvic inflammatory disease ("PID"), complications with her third pregnancy, including placenta previa and abruptio placenta with a cesarean section, and extreme emotional injuries secondary to the severe physical injuries, with the emotional injuries leading to an acute psychotic break, life-long disability, and schizophrenia. The Trust contended that the Claimant did not have uncontrolled bleeding or PID during any period while she used a Dalkon Shield. The Trust agreed that the medical records established the injuries of placenta previa, abruption, cesarean section, and severe mental illness. The Trust argued, however, that the Dalkon Shield did not cause or contribute to the pregnancy-related injuries or the mental illness because all of these problems occurred during periods when the Claimant was not using a Dalkon Shield.

## D. The Arbitrator's Decision

On November 17, 1998, the Arbitrator issued his decision and dismissed the Claimant's claim. The Arbitrator held that the Claimant had failed to meet her burden of establishing, by a fair preponderance of the evidence, that she was entitled to be awarded for her injuries allegedly sustained as a result of her use of the Dalkon Shields. In terms of the Claimant's alleged physical injuries, the Arbitrator stated that, while there was testimony indicating that the Claimant complained of excessive pain, bleeding, and infections

while using the Dalkon Shield, the Claimant's continued use of the Dalkon Shield on three separate occasions militated against complaints and the development of severe medical problems associated with the Dalkon Shield. In addition, Dr. Steinberger testified that in all of his medical experiences, he would not continue to prescribe an IUD as a means of contraception, as he did with the Claimant, with a patient complaining of persistent pain, bleeding, and infections. Addressing the problems relating to the Claimant's third pregnancy, the Arbitrator noted that the Claimant's ovaries and fallopian tubes were found to be intact and within normal limits. The Arbitrator held that these findings ruled out PID during the third pregnancy. The Arbitrator also held that the Claimant's use of the Dalkon Shield was unrelated to the placenta previa found during the pre-operative examination related to the third pregnancy.

In terms of the Claimant's alleged mental and psychological injuries, the Arbitrator noted that the Claimant's expert psychiatrist, Dr. Cohen, opined that the Claimant had a post-traumatic psychosis secondary to infection and pain caused by the Dalkon Shield, which was aggravated by the pregnancy and cesarean section. Dr. Cohen, however, also acknowledged that the Claimant had manifested psychotic symptoms for a three or four year period prior to the birth of the Claimant's third child. The Trust's psychiatrist, Dr. Arnoff, opined that the Claimant suffered from schizophrenia, a disease of the brain which is not caused by any of the trauma allegedly suffered by the Claimant. Dr. Arnoff also opined that there is nothing in the Claimant's medical history indicating that her use of the Dalkon Shield was a factor giving rise to the admission to the Staten Island Hospital. The Arbitrator acknowledged that the Claimant had suffered for many years from psychological problems and that her mental status had begun to deteriorate before the delivery of her third child. The Arbitrator held, how-

ever, that there was no credible evidence to relate the Claimant's deteriorated mental status to any use of a Dalkon Shield.

## II. The Claimant's Motion to Vacate and Motion to Correct

Both of the Claimant's Motions were filed with the Court on December 10, 1998. The Motion to Vacate is brought pursuant to Arbitration Rule 44(a), while the Motion to Correct is brought pursuant to Arbitration Rule 44(b). The Claimant's major arguments can be summarized and categorized as follows: 1) the Arbitrator abused his discretion by engaging in misconduct which prejudiced the Claimant in that the Arbitrator refused to hear closing argument; 2) the Arbitrator abused his discretion by engaging in misconduct which prejudiced the Claimant in that the Arbitrator allowed one of the Trust's experts to testify before the Claimant had finished presenting her case; 3) the Arbitrator exceeded his powers in the conduct of the hearing by allowing the Trust's expert to testify during the Claimant's case and by eliminating closing argument; and 4) the Arbitrator's award must be corrected or modified because the Arbitrator based his decision on evidence which was outside of the record.

### A. Arbitrator Refused to Hear Closing Argument

The Claimant argues that Arbitration Rule 41(a) entitles her to have counsel make a closing argument following the conclusion of the case. The Claimant alleges that upon the parties' statement that they had no further evidence or witnesses to offer, the Arbitrator rose, arranged for the transmittal of the exhibits to him, and bolted from the hearing room, declaring that he was headed home to Rochester. The Claimant contends that the failure to grant closing argument violated Arbitration Rule 41(a), and that the importance of summation cannot be gainsaid by any advocate.

### B. Arbitrator Allowed Trust Expert to Testify During Claimant's Case

In terms of the order of the Arbitration proceeding, the Claimant states that she had to call Dr. Steinberger, who was only available by video-tape, to testify before calling Dr. Cohen. The reason for this order was that the alleged physical injuries suffered by the Claimant, to which Dr. Steinberger testified, had to be established before Dr. Cohen testified as to the secondary psychiatric consequences of the physical injuries. Because the experts' testimony occupied the first day of the arbitration proceeding, the Claimant's case ran over to the second day. On the second day of the arbitration proceeding, the Claimant alleges that the Arbitrator allowed one of the Trust's experts, Dr. Arnoff, to testify before the Claimant was allowed to call Melvin Ladner to testify. The Claimant contends that the Arbitrator allowed this interruption in order to suit the convenience of Dr. Arnoff. The Claimant also contends that she did not agree with this interruption and that this interruption violated Arbitration Rule 31, which states that a claimant shall present her case before the Trust presents its case, if any.

### C. Refusing to Hear Closing Arguments and Allowing the Interruption in The Claimant's Case Prejudiced the Claimant and Warrant Vacation

According to the Claimant, the Arbitrator's refusing to hear closing statements and allowing the interruption in the Claimant's case resulted in bizarre errors of fact and law committed by the Arbitrator in his decision. The Claimant argues that these errors prejudiced the Claimant's case. The Claimant lists these errors in the Motions: 1) the Arbitrator incorrectly stated that Dr. Steinberger began treating the Claimant in May of 1968 because the treatment actually began in 1965; 2) the Arbitrator incorrectly concluded that the Claimant did not remove the Dalkon

Shields because of complications relating to her use of the IUD; 3) the Arbitrator incorrectly concluded that the Claimant's continued use of the Dalkon Shield on three separate occasions militated against complaints and development of medical problems; 4) the Arbitrator did not place proper emphasis on Dr. Steinberger's opinions by concluding that his testimony stood alone without support; 5) the Arbitrator wrongly concluded that there was no credible evidence to support the physical injuries because, as the Claimant argues, her testimony regarding her injuries was unrebutted by the Trust; 6) the Arbitrator incorrectly interpreted the finding of disability by the Social Security Administrative Law Judge; 7) the Arbitrator improperly placed weight and emphasis on the fact that the Claimant chose not to call certain of her treating physicians; 8) the Arbitrator improperly placed weight and emphasis on Dr. Arnoff's statement that he could find no reference to Dalkon Shield use in the Claimant's 1979–1991 psychiatric hospital records; and 9) the Arbitrator incorrectly concluded that the Claimant failed to carry her burden of proof because, as the Claimant argued, her evidence was wholly sufficient to satisfy the burden.

The Claimant also argues that refusing to accept a submission such as the closing argument, where the submission can be outcome determinative, is a fatal flaw. This denial of the Claimant's opportunity to be fully heard on the merits, without restriction, requires vacation of the Arbitrator's decision.

### D. The Arbitrator Exceeded His Powers By Refusing Closing Argument And By Allowing the Interruption in the Claimant's Case

The Claimant further argues, pursuant to Arbitration Rule 44(a)(4), that the Arbitrator exceeded his powers in the conduct of the hearing by allowing the Trust's expert to testify during the Claimant's case and by eliminating closing argument. The

Claimant essentially states that the Arbitrator violated the Arbitration Rules in committing these errors and thus exceeded his powers.

### E. The Arbitrator's Decision Must Be Corrected or Modified Because the Arbitrator Based His Decision on Evidence Outside of the Record

The evidence in dispute pertains to the testimony of Dr. Jones, one of the Trust's experts. Dr. Jones opined that the Dalkon Shield could not have caused the Claimant's placenta previa because he could find no linkage between the condition and IUDs in any of the medical literature. The Claimant contends that rather than go and research the matter himself, Dr. Jones called an anonymous research librarian and requested that the librarian search for any linkage. The Claimant argues that it was improper for the Arbitrator to allow Dr. Jones to testify that the librarian supposedly could not find any text establishing such a linkage. According to the Claimant, this testimony was inadmissible hearsay and was evidence outside of the record, and the Arbitrator's allowing the testimony into evidence provides a ground for correcting or modifying the Arbitrator's decision.

### III. The Trust's Response to the Claimant's Motions

The Trust filed its response with the Court on January 8, 1999. The Trust argues that the Arbitrator did not engage in misconduct or exceed his powers concerning closing argument because Arbitration Rule 41(a) is a permissive rule and closing argument is not mandatory. In addition, the Trust contends that, pursuant to Arbitration Rule 47, the Claimant waived any potential objection to the absence of closing argument because the Claimant did not complain about the matter until after the Arbitrator issued his decision. Regarding the Arbitrator's allowing the Trust expert to testify out of turn, the Trust

argues that Arbitration Rule 31 is also not mandatory and merely suggests an order of events during the arbitration proceeding. The Trust contends that the sequence of events was the Claimant's own creation and that the Claimant did not object to this process, thereby waiving any objection to this matter. In terms of the prejudice which resulted from these errors, the Trust contends that it is not the Court's duty to second-guess an Arbitrator's factual findings. As to the Claimant's other prejudice arguments, the Trust argues that the Claimant simply disagrees with the Arbitrator's conclusions, and mere disagreement with the Arbitrator's findings is not a basis for judicial review.

Finally, regarding the Motion to Correct and the evidence supposedly outside the record, the Trust contends that Dr. Jones actually did research the matter himself and performed his own search at the University of Connecticut Health Center Library. Regardless of this fact, the Trust argues that the Claimant has not satisfied the test which must be met in order to obtain review of an arbitrator's evidentiary ruling.

### IV. Motions Will Be Decided on the Pleadings

Neither party requested oral argument, and pursuant to Local Bankruptcy Rule 9013-1(L) and Federal Rule of Civil Procedure 78, the Court will decide both the Motion to Vacate and the Motion to Correct on the parties' pleadings.

### CONCLUSIONS OF LAW

### I. Judicial Review of an Arbitration Decision

In order to vacate an arbitrator's decision concerning a Dalkon Shield claim, the movant must prove at least one of the four grounds identified in Rule 44(a) of the Arbitration Rules:

1. The decision was procured by corruption, fraud, or undue means.

2. The arbitrator was biased or corrupt.

3. The arbitrator was guilty of abuse of discretion in refusing to postpone the hearing, refusing to admit competent and relevant evidence or engaging in misconduct that prejudiced the moving party.

4. The arbitrator exceeded his or her powers, or so exercised them such that he or she failed to make a final, definite, and unambiguous decision.

Arbitration Rule 44(a). An arbitrator's decision may also be vacated "where the arbitrator acted in manifest disregard of the law." *O'Connor v. Dalkon Shield Claimants Trust,* 158 B.R. 640, 642 (Bankr.E.D.Va. 1993). According to Arbitration Rule 44(d), the criteria above are to be interpreted consistently with the provisions contained in 9 U.S.C. Sections 10 through 12, the Federal Arbitration Act (the "FAA"). In her Motion to Vacate, the Claimant is proceeding under the misconduct and exceeding powers provisions. The movant seeking to vacate a decision bears the burden of showing one of the above grounds for reversal. *See Germany v. Dalkon Shield Claimants Trust,* 197 B.R. 525, 527 (E.D.Va.1995).

On review of a decision, the Court grants the arbitrator substantial deference. *Id.* In fact, the level of abidance is thought to parallel that of extreme deference. *See O'Connor,* 158 B.R. at 642. The Court generally is not to reconsider the arguments and evidence proffered at the arbitration hearing; rather, the Court's role is limited to determining whether the arbitration process itself was flawed. *See Germany,* 197 B.R. at 527. The Court, however, will not overturn every stone when reviewing the arbitration process; it will simply determine "whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Id.* at 529.

■ The Court has addressed the grounds for judicial review of an arbitrator's decision many times. In *O'Connor*, the Court explained:

> The standard of review for arbitration decisions is extremely deferential. Courts may vacate the award only upon a showing of one of the grounds listed in the Arbitration Act, or if the arbitrator acted in manifest disregard of the law. An arbitration decision is enforceable even when based on a misinterpretation of the law, faulty legal reasoning, or erroneous legal conclusions, and may be reversed only when the arbitrator correctly understands and states the law but proceeds to disregard it.

158 B.R. at 642. This narrow scope of judicial review is necessary to accord the arbitration process a degree of finality and to keep it from becoming only an advisory one. The Court will not overturn an arbitration decision merely because the Court would have reached a different conclusion if presented with the same facts. *See MacLeod v. Dalkon Shield Claimants Trust*, 213 B.R. 468, 470 (E.D.Va.1997).

## II. The Arbitrator Did Not Exceed His Powers By Allowing the Trust's Expert To Testify During the Claimant's Case or By Eliminating Closing Argument

■ As stated above, the Court is to apply Arbitration Rule 44 in accordance with the provisions of the FAA, 9 U.S.C. Sections 10 through 12. Section 10(a)(4) of the FAA (formerly Section 10(d)), which deals with a claim that an arbitrator has exceeded his or her powers, mirrors Arbitration Rule 44(a)(4), also dealing with exceeding powers. Previous Dalkon Shield decisions have addressed such claims, but none of them has clearly laid out the standard to be applied in analyzing these claims. Thus, to determine the standard for vacating an arbitration award based on a claim that the arbitrator has exceeded his or her powers, the Court will turn to relevant case law interpreting Section 10(a)(4) of the FAA. The standard has

been laid out clearly by several courts: arbitrators do not exceed their powers unless they rule on matters outside of their proper consideration, they rule on a question not put before them, or they render a decision beyond the scope of the issues submitted for decision. *See J.A. Jones Const. Co. v. Flakt, Inc.*, 731 F.Supp. 1061, 1064 (N.D.Ga.1990); *see also Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 62 (3rd Cir.1986), *Raytheon Co. v. Computer Distributors, Inc.*, 632 F.Supp. 553, 558 (D.Mass.1986).

The Court, in one of its many Dalkon Shield arbitration decisions, addressed a claim that an arbitrator had exceeded his powers. In *Dalkon Shield Claimants Trust v. Crombie*, 221 B.R. 169 (E.D.Va. 1998), the Court held that an arbitrator had exceeded his powers because of his incorrect finding that the payment of reimbursement checks from the Trust to the claimant constituted an admission of causation. Thus, the decision was vacated and a new arbitration was ordered because the arbitrator considered a matter, the payment of the checks, which was outside the scope of his consideration. The Court addressed a similar challenge to an arbitrator's power in *MacLeod*. There, the Court found that the arbitrator had not exceeded his powers in interpreting the language of Arbitration Rule 40, which pertains to the statute of limitations for arbitration claims. In essence, the Court found that the arbitrator properly exercised his powers and did not exceed them in interpreting and applying the language of the rule because the rule was properly within the scope of his consideration. *See MacLeod*, 213 B.R. at 471; *see also Germany*, 197 B.R. at 525 (holding that the arbitrator did not exceed his authority in rendering conclusion as to causation, an issue properly within the arbitrator's scope of consideration).

■ Application of the above standard leads the Court to conclude that the Arbitrator here did not exceed his powers in denying closing argument or in allowing

the interruption in the Claimant's case. The Claimant has provided the Court with no evidence that the Arbitrator ruled on a matter outside of his proper consideration, ruled on a question not put before him, or rendered a decision beyond the scope of the issues submitted for a decision. In fact, upon review of the Arbitrator's decision, the Court finds that the Arbitrator properly ruled on all of the issues placed before him in accordance with Arbitration Rule 43(d). The Claimant argues that the Arbitrator breached certain Arbitration Rules: while these alleged breaches may constitute misconduct which prejudiced the Claimant, an issue discussed below, they do not constitute the Arbitrator's exceeding his powers.

## III. The Court Will Deny the Motion to Correct

### A. Grounds for Modifying/Correcting an Arbitrator's Decision

■ To modify or correct an arbitrator's decision, the Court must find one of the three grounds identified in Rule 44(b) of the Arbitration Rules:

1. The arbitrator made a mathematical error or an obvious material mistake of fact in the award amount.
2. The arbitrator based his or her decision on evidence outside the arbitration record.
3. The form of the decision or award is flawed.

Arbitration Rule 44(b). The Claimant's Motion to Correct is based on Arbitration Rule 44(b)(2) in that the Claimant argues that the Arbitrator considered evidence outside the record by allowing in Dr. Jones' testimony regarding the anonymous librarian's research.

### B. No Basis Exists for Modifying or Correcting the Decision

■ The Court has never ruled upon the standards laid out in Arbitration Rule 44(b) for modifying or correcting an arbitrator's decision. The Court, however, needs little guidance in addressing the Claimant's argument here because it is without merit. There has been no showing by the Claimant that the evidence in question was outside the record. In fact, the testimony at issue became part of the record when it was allowed to proceed, and any argument raised by the Claimant is simply an evidentiary challenge to the Arbitrator's decision to allow the testimony into the record. The Claimant has not persuaded the Court that allowing this testimony constitutes consideration of evidence outside the record, and the Motion to Correct will be denied as no grounds exist to grant the Motion.

The Claimant is simply objecting to the testimony of Dr. Jones regarding the librarian's research because she argues that the Arbitrator should not have allowed this testimony into the record. The Claimant is challenging the Arbitrator's evidentiary ruling regarding the testimony, and evidentiary challenges are properly analyzed under Arbitration Rule 44(a)(3), which pertains to vacation. Thus, the Court will address the Claimant's evidentiary argument here as part of her Motion to Vacate and will apply the appropriate standard for evidentiary challenges.

### C. Standard for Evidentiary Challenges Has Not Been Satisfied

■ To vacate an arbitrator's decision on the basis of an evidentiary ruling, the moving party must prove that his or her rights have been prejudiced and that he or she was denied a fair hearing. *See Germany*, 197 B.R. at 529. The Court has explained that disagreement with the arbitrator's evidentiary finding is not adequate grounds for vacating the decision. The arbitrator is "the judge of the admissibility of all evidence submitted during the hearing." *Briggs v. Dalkon Shield Claimants Trust*, 211 B.R. 199, 201 (E.D.Va.1997); *see also Maksimuk v. Dalkon Shield Claimants Trust*, 223 B.R. 492, 494 (E.D.Va.1998). As set out in both of these decisions, to obtain any review of an arbi-

trator's ruling admitting or excluding evidence, the claimant must satisfy a two-part test and show both of the following: 1) that the arbitrator's evidentiary ruling was erroneous, and 2) that the error deprived the claimant of a fundamentally fair hearing. Without a showing of both of the elements, the Court will not revisit an arbitrator's evidentiary rulings. In both *Briggs* and *Maksimuk*, the Court concluded that the claimants simply disagreed with the arbitrator's rulings and could not show either of the required elements.

■ The Claimant here has not satisfied the two-part test. The Arbitrator's decision to allow the testimony regarding the research librarian's research was not erroneous. The Arbitrator allowed the testimony by explaining that experts commonly refer to various sources in their testimony and preparation; this was the correct ruling. Federal Rule of Evidence 703, made applicable to the arbitration hearing pursuant to Arbitration Rule 32, allows an expert to testify about facts and data which form the basis of an opinion, even if the facts and data are not admissible in evidence by themselves, so long as the facts and data are reasonably relied upon by experts in that particular field. The Arbitrator correctly and properly ruled that the librarian's research constituted facts and data which experts reasonably rely upon in forming their opinions.

Even if the Court were to find that the evidentiary ruling was erroneous, the Claimant has not persuaded the Court that she was deprived of a fundamentally fair hearing. The Claimant fails to point out that in addition to having the librarian do a search, Dr. Jones did his own independent search and reached the same result. In fact, it appears that the Arbitrator did not even rely upon the disputed testimony. In his decision, the Arbitrator states that Dr. Jones could find no subject matter anywhere in the medical literature establishing the linkage between IUD usage and placenta previa. The Claimant certainly was not deprived of a fair hearing if the Arbitrator did not even consider the disputed testimony in reaching his decision.

## D. Conclusion on Evidentiary Issues

The Court will deny the Motion to Correct because no grounds exist for correcting or modifying the Arbitrator's decision. In addition, the Claimant's challenge of the Arbitrator's decision allowing the testimony will be denied as the Claimant has failed to satisfy the required two-part test.

## IV. Several of the Claimant's Prejudice Claims Are Without Merit

The Claimant argues that the Arbitrator's refusing to hear closing statements and allowing the interruption in her case resulted in bizarre errors of fact and law committed by the Arbitrator in his decision. The Claimant also argues that these errors prejudiced the Claimant's case. The Court finds several of these prejudice arguments to be unavailing.

■ The Claimant's disagreement with certain of the Arbitrator's factual findings does not concern the Court as a claim of factual error in an arbitrator's decision is an inappropriate ground for judicial review. *See Short,* 219 B.R. at 115; *see also Germany,* 197 B.R. at 529. The Claimant also argues that the Arbitrator made several incorrect conclusions on the following issues: the conclusion as to the reason why the Claimant removed the Dalkon Shields, the conclusion that the continued use of the Dalkon Shield militated against the development of medical problems, the conclusion that there was no credible evidence to support the Claimant's physical injuries, and the conclusion that the Claimant failed to carry her burden of proof. This argument does not concern the Court as disagreement with an arbitrator's conclusions does not constitute adequate grounds for vacating a decision. *See Germany,* 197 B.R. at 529. Disagreement with the arbitrator's factual findings and overall conclusions is not one of the

grounds for vacating an arbitrator's decision in Arbitration Rule 44(a).

The Claimant further argues that the Arbitrator did not place enough emphasis on certain evidence, improperly placed too much emphasis on certain evidence, and improperly interpreted certain evidence. Specifically, the Claimant points to the following errors: the Arbitrator did not place proper emphasis on Dr. Steinberger's opinions, the Arbitrator incorrectly interpreted the Social Security disability finding, the Arbitrator improperly placed emphasis on the Claimant's choice not to call certain physicians, and the Arbitrator improperly placed emphasis on Dr. Arnoff's testimony that he could find no reference to Dalkon Shield use in the Claimant's hospital records. Again, the Court finds this argument to be unavailing. The Court has held that disagreement with the arbitrator's weighing and interpretation of the evidence is not an appropriate ground for judicial review. *See Briggs*, 211 B.R. at 203. The Court's review is limited to determining whether the Arbitrator did the job he was told to do, not whether he did it well or reasonably or correctly, but simply whether he did it. *See Germany*, 197 B.R. at 529. The Arbitrator here properly did his job in weighing the evidence, interpreting the evidence, and reaching conclusions on the issues pursuant to Arbitration Rule 43(d). The Claimant's disagreement with this weighing, interpreting, and reaching is not sufficient grounds for vacating the Arbitrator's decision in Arbitration Rule 44(a).

## V. Allowing the Interruption in the Claimant's Case Does Not Rise to the Level of Arbitrator Misconduct Which Prejudiced the Claimant's Case

### A. Interruption Did Violate Arbitration Rule 31

■ Arbitration Rule 31 pertains to the conduct of the arbitration hearing and provides as follows:

The parties may then present opening statements. The plaintiff will then present his or her case, which may include exhibits and witnesses, who may be cross-examined. The Trust may then present its case, which may include exhibits and witnesses, who may be cross-examined. The plaintiff may then present rebuttal evidence, which is limited to evidence relevant to new matters raised by the Trust in its case and not reasonably anticipated by the plaintiff. The parties may each conclude with closing arguments.

Arbitration Rule 31. Because there is no case law interpreting Arbitration Rule 31, the Court must base its analysis on the plain meaning of the words. *See U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

Arbitration Rule 31 provides the order of the arbitration hearing: the plaintiff will present his or her case, the Trust may present its case, the plaintiff may present rebuttal evidence, and the parties may conclude with closing argument. The Trust's decision to put on a case and the plaintiff's decision to present rebuttal evidence are both left to the parties' sole discretion; if the Trust decided to put on a case, or if the plaintiff decided to present rebuttal evidence, the Arbitrator would certainly be in no position to preclude either party from proceeding.

■ Arbitration Rule 31 was violated as one of the Trust's experts, Dr. Arnoff, was allowed to testify before Melvin Ladner, one of the Claimant's witnesses, testified out of convenience to Dr. Arnoff's schedule. Thus, the Trust was permitted to begin putting on its case before the Claimant finished presenting her case. The Trust argues that the rule suggests an order of events and does not require the arbitrator to conduct the hearing in a set sequence. The Court finds this argument unavailing. Arbitration Rule 31 is mandatory in providing that the plaintiff *will* present his or her case before the Trust

puts on its case (if any). The Court interprets this rule to mean that the plaintiff must be allowed to present his or her *entire* case before the Trust puts on its case. The Arbitrator even admitted that the witness testimony was out of order. The Claimant was entitled to set the order of her witnesses as she saw fit and was entitled to present her whole case before the Trust presented its case. This interruption in the Claimant's case was in direct contravention and violation of Arbitration Rule 31.

### B. The Claimant Waived Her Right to Object to the Rule Violation

Arbitration Rule 47, which pertains to waiver of rules, provides as follows:

A party who proceeds with the arbitration after knowing that any provision or requirement of these Rules has not been complied with and who fails to state a timely objection thereto shall be deemed to have waived the right to object.

Arbitration Rule 47. The Trust argues that the Claimant waived her right to object now to the rule violation because she failed to state a timely objection at the time of the violation. The Claimant argues that she made a sufficient and timely objection to the violation.

Three Dalkon Shield arbitration decisions have addressed the waiver issue. *See Maksimuk,* 223 B.R. at 497 (holding that a claimant's failure to invoke the recusal remedy of Arbitration Rule 5 to question an arbitrator's impartiality precluded the claimant from seeking a new arbitration hearing after the arbitrator had heard and ruled on the merits of her case); *see also Dalkon Shield Claimants Trust v. Fields,* 219 B.R. 135, 144 (E.D.Va.1998) (holding that a claimant who agreed to the selection of an arbitrator and went forward with the hearing without objecting waived any later objection to the arbitrator's alleged bias); *Short v. Dalkon Shield Claimants Trust,* 219 B.R. 111, 114 (E.D.Va. 1998) (holding that a claimant's failure to ask for the removal of the arbitrator as

provided in Arbitration Rule 5 precludes the granting of a new arbitration hearing). In all three cases, it was quite clear that the claimant had failed to object and had thus waived the objection because an objection was simply not raised or stated. Thus, the Dalkon Shield case law provides the Court with no guidance in determining what is necessary to state a timely objection. The Court, therefore, must look to other arbitration case law for guidance.

In *Brotherhood of Locomotive Engineers Int'l Union v. Union Pacific Railroad Co.,* 134 F.3d 1325 (8th Cir.1998), the Court explained that parties to an arbitration may waive procedural defects by failing to bring such issues to the arbitrator's attention in time to cure the defects. The Court stated that this rule applies because orderly procedure and good administration require that any objections to the proceedings must be made while the arbitrator has the opportunity to correct the problem in order to raise issues which are reviewable by the courts. *Id.* at 1330. A litigant is not allowed to withhold his objections during the proceedings, await the outcome of the arbitration, and then complain that he was denied his rights if he does not approve of the decision. *Id.* The Court concluded that to object properly, a party must bring the issue to the arbitrator's attention in time to allow the arbitrator an opportunity to cure the defect. *Id.* The District Court in Illinois, in *United Transportation Union v. Illinois Central Railroad,* 998 F.Supp. 874, 887 (N.D.Ill.1998), reached the same conclusion, holding that to object properly, a party must bring the issue to the arbitrator's attention so that the arbitrator has an opportunity to cure the defect.

In a non-arbitration case, the District Court in Puerto Rico, in *Taber Partners I v. Insurance Co. of North America, Inc.,* 906 F.Supp. 735 (D.P.R.1995), set forth the following standard for properly stating an objection:

It is well settled that when a trial judge announces a proposed course of action which litigants believe to be erroneous, the parties detrimentally affected must act expeditiously to call the error to the judge's attention or to cure the defect, not lurk in the bushes waiting to ask for another trial when their litigatory milk curdles.

*Id.* at 736. Using the above analysis, the Court finds that in order to state a timely objection and avoid waiving a later objection pursuant to Arbitration Rule 47, the objecting party must simply raise the issue with the arbitrator and call the error to the arbitrator's attention. The use of the word "objection" or a form of it is not necessary or required to preserve an objection. Applying this standard, the Court finds that the Claimant did not properly object to the procedural violation of Arbitration Rule 31 pertaining to the interruption, and thus did not preserve the arguments which she raises in her Motion to Vacate pertaining to the interruption.

▆▆ The Claimant did not properly object to the interruption. Claimant's counsel complained about allowing an accommodation for the Trust's expert when his witness. Dr. Cohen, had waited until the afternoon of the first day to testify. After the Arbitrator had decided to allow Dr. Arnoff to testify before Melvin Ladner testified, however, Claimant's counsel stated that he abided by the ruling, and only found the situation to be uncomfortable. The Court finds that the Claimant did not bring the error to the Arbitrator's attention; thus, she did not preserve her objection and waived it pursuant to Arbitration Rule 47.

### C. The Interruption Did Not Prejudice the Claimant's Case

▆▆ Even if the Court were to find that the Claimant did properly object to the interruption, thus preserving her objection now and not waiving it, the Claimant has not persuaded the Court that she suffered any prejudice as a result of the

rule violation. The Claimant must prove, pursuant to Arbitration Rule 44(a)(3), that the procedural violation rises to the level of Arbitrator misconduct which prejudiced her as the moving party. The standard for demonstrating such misconduct has been established in several Dalkon Shield arbitration decisions. The standard is as follows:

> In order for an arbitration decision to be set aside on the basis of an arbitrator's alleged misconduct, the moving party must prove that her rights have been prejudiced and that she was denied a fair hearing.

*Briggs*, 211 B.R. at 202; *see also Germany*, 197 B.R. at 529. With this standard in mind, the Court will address the Claimant's prejudice allegations.

Although allowing the Trust's expert to testify before Melvin Ladner testified was a violation of Arbitration Rule 31, the Court finds that this error was not arbitrator misconduct which prejudiced the Claimant's case such that she was deprived of a fair hearing. The Claimant has provided the Court with no evidence to suggest that the interruption made Dr. Arnoff's testimony more convincing, made Melvin Ladner's testimony less convincing, or affected the Arbitrator's decision in any way.

The interruption of the Claimant's case in violation of Arbitration Rule 31 is similar to the situation presented to the Court in the *Briggs* decision. There, the arbitrator violated Arbitration Rule 43(a) by not issuing a written decision within thirty days after the close of the arbitration hearing. *See Briggs*, 211 B.R. at 203. The Court concluded that the Arbitrator had certainly erred in failing to comply with the rule. In applying the standard for arbitrator misconduct, that the moving party must prove that her rights have been prejudiced and that she was denied a fair hearing, the Court found that Briggs merely argued that the rule had been violated but made no showing that she was in any way prejudiced by the short delay.

*Id.* The Court could discern no prejudice at all as there was no indication that the arbitrator's decision would have been any different had it been rendered thirteen days earlier. Finding that Briggs had suffered no prejudice, the Court ruled that she was not entitled to have the arbitrator's decision set aside under Arbitration Rule 44(a)(3). *Id.*

The Claimant has made a similar, if not identical, argument here. The Claimant has shown that the Arbitrator violated Arbitration Rule 31 by allowing the interruption in her case, but has pointed to no prejudice which resulted from the interruption. Melvin Ladner was allowed to testify, and there has been no showing by the Claimant that allowing Dr. Arnoff to testify before Mr. Ladner undermined or discredited Mr. Ladner's testimony in any way. There is no indication that the Arbitrator's decision would have been any different had Mr. Ladner testified before Dr. Arnoff testified. The Arbitrator allowed Dr. Arnoff to testify as an accommodation, and although this accommodation was in violation of Arbitration Rule 31 and is not condoned by the Court, the Court finds that the interruption did not prejudice the Claimant such that she was denied a fair hearing.

## VI. Denying the Claimant Her Closing Argument Does Rise to the Level Of Arbitrator Misconduct Which Prejudiced the Claimant's Case

### A. Denying Closing Argument Violated Arbitration Rule 31

Arbitration Rule 41(a), which pertains to the conclusion of the arbitration hearing, addresses closing arguments and provides as follows:

> When the parties state that they have no further evidence or witnesses to offer, **and after the parties have made their closing arguments, if any,** and in any event not later than 3 days after the hearing begins, the arbitrator shall declare the hearing closed.

Arbitration Rule 41(a) (emphasis added). The Claimant argues that this rule, in conjunction with Arbitration Rule 31, entitled her to a closing argument, while the Trust argues that the use of the words "may" and "if any" in these rules indicates that allowing closing arguments is a decision left to the discretion of the arbitrator. Because there is no case law interpreting these two rules, the Court must base its analysis on the plain meaning of the words. *See U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

■ The Court finds that the Claimant was entitled to make a closing argument. The use of the words "may" and "if any" does indicate discretion, but the decision to make a closing argument is left to the discretion of the parties, not the arbitrator. Here, the Claimant desired to make a closing argument and brought the matter to the Arbitrator's attention by asking if there would be any closing arguments. Once this request was made, the Arbitrator should have allowed the closing argument to proceed. The Court cannot fathom that Arbitration Rules 31 and 41 are to be interpreted to mean that if the party desires to make a closing argument, it is up to the arbitrator to decide if such a closing will be allowed.

As set out above, Arbitration Rule 31 provides the order of the arbitration hearing: the plaintiff will present his or her case, the Trust may present its case, the plaintiff may present rebuttal evidence, and the parties may conclude with closing argument. The Trust's decision to put on a case and the plaintiff's decision to present rebuttal evidence are both left to the parties' sole discretion. Thus, it follows that the decision on closing argument is left to the parties' discretion and not the arbitrator's discretion. The use of "if any" in Arbitration Rule 41 simply refers to the situation where either side decides to proceed with closing argument. Here, the Claimant requested closing argument and the Arbitrator denied the request, stating

that he was reserving decision; this denial of closing argument was in direct contravention and violation of Arbitration Rule 31.

## B. The Claimant Did Not Waive Her Right to Object to the Rule Violation

Arbitration Rule 47 pertains to waiving one's right to object to a rule violation. As provided above, the Court has found that in order to state a timely objection and avoid waiving a later objection pursuant to this rule, the objecting party must simply raise the issue with the arbitrator and call the error to the arbitrator's attention. The use of the word "objection" or a form of it is not necessary or required to preserve an objection. The Trust argues that the Claimant waived her right to object now to the rule violation pertaining to closing argument because she failed to state a timely objection at the time of the violation. The Claimant argues that she made a sufficient and timely objection to the violation.

■ The Court finds that the Claimant properly objected to this error. After the parties and the Arbitrator had discussed the exhibits and the transcript, Claimant's counsel stated that the arbitration had not been closed, to which the Arbitrator responded that he reserved decision. Claimant's counsel then raised the issue that the parties had not presented closing arguments, to which the Arbitrator responded by commending both sides on an excellent presentation. The Claimant, thus, properly brought the error to the Arbitrator's attention and preserved her objection. All that is required to preserve an objection is to raise the issue and call the error to the Arbitrator's attention; the Claimant properly preserved her objection to the lack of closing argument by raising the issue that the parties had not presented closing arguments.

The Claimant properly brought the procedural violation of Arbitration Rule 31 to the Arbitrator's attention at the proper time. Although Claimant's counsel did not use the word "object" or a form of it, he properly preserved the objection by raising the issue and calling the error to the Arbitrator's attention in time for the Arbitrator to correct the error. The Claimant was not required to cure the defect, only bring it to the Arbitrator's attention.

## C. Standard for Misconduct and Elements of a Fair Arbitration Hearing

As provided above, in order to show that an arbitrator engaged in misconduct which prejudiced a party, that party must show that his or her rights have been prejudiced and that he or she was denied a fair hearing. Previous Dalkon Shield arbitration decisions have laid out this standard and applied it, but none has defined what a party is entitled to in terms of a "fair hearing." Thus, pursuant to Arbitration Rule 44(d), the Court will look to FAA case law in order to determine the elements of a fair hearing.

■ The general consensus reached by the courts is that the elements of a fair arbitration hearing include the following: notice of the hearing, an opportunity for each party to be heard, an opportunity for each party to present relevant and material evidence, and an opportunity for each party to present argument before the decision makers. *See Bowles Financial Group, Inc. v. Stifel, Nicolaus & Co., Inc.,* 22 F.3d 1010, 1013 (10th Cir.1994); *see also Hayne, Miller & Farni, Inc. v. Flume,* 888 F.Supp. 949, 952 (E.D.Wis. 1995); *Prudential Securities, Inc. v. Dalton,* 929 F.Supp. 1411, 1416 (N.D.Okla. 1996). The District Court in Hawaii, in *Wailua Associates v. Aetna Cas. and Sur. Co.,* 904 F.Supp. 1142, 1148 (D.Haw.1995), held that the arbitrator is not bound to hear all of the evidence tendered by the parties, but is bound to give each party an adequate opportunity to present its evidence and arguments. The one Dalkon Shield decision which even broaches the

subject of a fair hearing, *Germany*, held that a claimant received a fair hearing as she was afforded the full opportunity to submit evidence and call witnesses during the hearing. *See Germany*, 197 B.R. at 529. The difference between *Germany* and the case at bar is that in *Germany*, the claimant was not denied a closing argument and thus the Court did not have the opportunity to approach this issue.

### D. Fair Arbitration Hearing Includes the Right to Make Closing Argument

██ The Court finds that a fair hearing includes the right to make a closing argument. As provided above, a fair hearing consists of the absolute right to present argument to the arbitrator, and not allowing the Claimant here to make a closing argument deprived her of that right. When the Claimant elected to proceed to arbitration, she signed an Arbitration Election and Agreement which submitted her case to binding arbitration under the Arbitration Rules. The Court has already found that Arbitration Rule 31 entitled the Claimant to exercise her discretion in choosing whether or not to make a closing argument. The Claimant chose to make such a closing, and her being denied of the closing deprived her of a fair hearing. The arbitration process itself was flawed because of the denial of closing argument, and this flaw constitutes sufficient grounds to vacate the Arbitrator's decision. *See Germany*, 197 B.R. at 528.

The Trust argues that the Claimant cannot possibly show that the absence of closing argument prejudiced her because she cannot establish that whatever her counsel would have said in a closing argument would have altered the Arbitrator's decision. The Trust contends that the Court should not have to speculate what Claimant's counsel would have said in a closing argument which would have been persuasive and convincing and would have altered the Arbitrator's decision. The Court disagrees with the Trust's arguments and

need not look any further than a previous Dalkon Shield arbitration decision to explain its disagreement.

### E. The *Gaither* Decision

In *Dalkon Shield Claimants Trust v. Gaither*, 210 B.R. 527 (E.D.Va.1997), the Trust argued that the arbitrator had not made a final, definite, and unambiguous decision, a claim which is grounds for vacation under Arbitration Rule 44(a)(4). Facts concerning the statute of limitations came out during the arbitration, and the Trust contended in its closing argument that Gaither's claim was barred by the three-year statute of limitations applicable to arbitration claims under Arbitration Rule 40(a). *Id.* at 528. The arbitrator awarded Gaither $33,000.00, and in addressing the statute of limitations defense, concluded that this issue was not raised until after the conclusion of the evidence. *Id.* at 529. The Trust moved to vacate the decision, arguing that the arbitrator's reference to the limitations issue, but his failure to rule on the issue, left the ruling uncertain and ambiguous.

The Court agreed with the Trust and vacated the arbitrator's decision, ruling that the arbitrator had failed to address the limitations issue. *Id.* at 530. In failing to address this issue, the arbitrator failed to comply with Arbitration Rule 43(d), which requires a full determination of all issues to be decided. The Court agreed with the Trust's impression that the arbitrator's mentioning the limitations issue suggested that he saw some relevance in the fact that the limitations defense had not been raised by the Trust until after the close of the evidence. *Id.* The Court concluded that the Arbitration Rules do not require that the limitations defense be raised at any particular time, and the fact that the Trust raised the defense in its closing argument is not a valid reason to reject the defense. The Court found that the arbitrator had failed to issue a final and definite decision on the Trust's limitations defense, and under Ar-

bitration Rule 44(a)(4), vacated the award and remanded the case to the arbitrator for the sole purpose of ruling on the limitations defense. *Id.*

The importance of a closing argument, viewed in light of the *Gaither* decision, is obvious. The Trust made an argument during the closing argument, this argument was not fully considered by the arbitrator, and as a result of not fully considering a closing argument, the arbitrator's decision was vacated. The fact that a closing argument's not being fully considered was the basis of a vacation is reason enough to demonstrate the importance of closing and to vacate the decision here. As the Trust points out, the Court should not speculate what Claimant's counsel would have said in a closing argument; the Court does not have to take this step in reaching its decision, nor must it speculate as to whether the closing would have impacted the Arbitrator's decision. The mere possibility that Claimant's counsel had prepared persuasive arguments for closing satisfies the Court of the value of the closing.

In *Gaither*, this is the exact tactic which the Trust took; it elicited certain testimony during the arbitration regarding the statute of limitations, and then presented its argument interpreting this testimony during the closing argument. It is certainly conceivable that Claimant's counsel followed this same tactic here and awaited the opportunity to make arguments during the closing based on the testimony elicited during the hearing. The Claimant should have been allowed to sum up because it is only after the closing that the arbitration is closed and the arbitrator has all of the issues to be decided. The fact that the Claimant was not even allowed to make closing arguments, and the fact that not fully considering a closing argument was the basis of the vacation in *Gaither*, lead the Court to conclude that the Claimant's rights were prejudiced and that she was denied a fair hearing.

The *Briggs* decision reached by the Court is easily distinguishable here. There, the Court ruled that the arbitrator had not engaged in misconduct which prejudiced the claimant by issuing a late decision and thereby violating Arbitration Rule 43(a). *See Briggs,* 211 B.R. at 203. Thus, the Court ruled that a violation of Arbitration Rule 43 did not rise to the level of misconduct which prejudiced the claimant, while the Court is ruling today that a violation of Arbitration Rule 31 in denying closing argument does rise to this level. The difference is the severity of the rule violation; the *Briggs* violation was a technical rule violation while the violation here was certainly substantive. The Court in *Briggs* found that the claimant made no showing of prejudice, whereas here there was prejudice in that denial of a closing argument deprived the Claimant of a fair hearing. This reasoning is in line with the Court's holding above that the Claimant failed to show any prejudice as a result of the violation of Arbitration Rule 31 which allowed the Trust's expert to testify before the Claimant finished putting on her case.

**F. Arbitrator's Decision Will Be Vacated and the Case Remanded To a New Arbitrator**

In order to show that an arbitrator engaged in misconduct which prejudiced a party, that party must show that his or her rights have been prejudiced and that he or she was denied a fair hearing. The Claimant has proven to the Court that the Arbitrator engaged in such misconduct by violating Arbitration Rule 31 in denying her the right to present closing argument. One of the elements of a fair arbitration hearing is the right to present argument, and the denial of closing argument deprived the Claimant of a fair hearing. In addition, the Claimant has shown that her rights were prejudiced by this denial in that the value of a closing argument cannot be underestimated, as evidenced by the *Gaither* decision. Pursuant to Arbitration Rule 44(a)(3), the Court will grant the

Claimant's Motion to Vacate and will vacate the Arbitrator's decision.

■ The Court will also order that the Claimant's case be remanded to a new arbitrator. In *Gaither*, the Court remanded the claimant's case to the same arbitrator so that he could rule on the Trust's statute of limitations defense. *See Gaither*, 210 B.R. at 530. Recently, in *Widmark v. Dalkon Shield Claimants Trust*, 230 B.R. 82 (E.D.Va.1999), the Court remanded the claimant's case to the same arbitrator so that he could consider the presumption of causation applicable in arbitration proceedings. In *Crombie*, however, the Court remanded the claimant's case to a new arbitrator because the arbitrator had exceeded his powers. *See Crombie*, 221 B.R. at 176. The Court finds the *Crombie* situation to be similar to the case at bar in that the Arbitrator here and the arbitrator in *Crombie* acted in a prejudicial way which warrants a new arbitrator on remand. Therefore, the Claimant will be awarded a new arbitration proceeding and a new arbitrator.

### CONCLUSION

Several of the Claimant's arguments are without merit. The Arbitrator did not exceed his powers by allowing the Trust's expert to testify during the Claimant's case or by eliminating closing argument because in doing so, the Arbitrator did not rule on a matter outside the scope of his consideration or render a decision beyond the scope of the issues submitted to him for a decision. The Court will deny the Motion to Correct because no basis exists for modifying or correcting the decision as the evidence in question was not outside the record. Further, the Claimant's challenge to the evidence in question is unsuccessful because the Claimant has not shown that the Arbitrator's evidentiary ruling was erroneous or that she was deprived of a fundamentally fair hearing as a result of the ruling. The Court does find that there were violations of Arbitration Rule 31 in denying closing argument and

in allowing the interruption, and finds that the Claimant waived her right to object to the interruption but did not waive her right to object to the denial of closing argument.

In terms of the alleged prejudice which resulted from this Arbitrator misconduct, several of the Claimant's claims are without merit as a claim of factual error, disagreement with an arbitrator's conclusions, and disagreement with the arbitrator's weighing and interpretation of the evidence are not appropriate grounds for judicial review. In addition, allowing the interruption in the Claimant's case does not equate into a finding of misconduct because the Claimant has presented no evidence of any prejudice which resulted from the interruption. The Claimant has persuaded the Court, however, that denying her a closing argument does rise to the level of arbitrator misconduct which prejudiced her case. The denial of a closing prejudiced the Claimant's rights and deprived her of a fair hearing, and pursuant to Arbitration Rule 44(a)(3), the Court will grant the Motion to Vacate and order a new arbitration hearing before a new arbitrator. An appropriate Order will be entered simultaneously herewith in conformity with this Memorandum Opinion.